No. 24-13111

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

◆

ALABAMA STATE CONFERENCE OF THE NAACP, et al.,
*Plaintiffs-Appellees*,

v.

STEVE MARSHALL, in his official capacity as
Attorney General of Alabama,
*Defendant-Appellant*.

◆

On Appeal from the United States District Court for the
Northern District of Alabama, No. 2:24-CV-420-RDP

## TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL

> Steve Marshall
>   *Attorney General*
> Edmund G. LaCour Jr.
>   *Solicitor General*
> Soren Geiger
>   *Assistant Solicitor General*
> Charles McKay
>   *Assistant Attorney General*
> OFFICE OF THE ATTORNEY GENERAL
> STATE OF ALABAMA
> 501 Washington Ave.
> Montgomery, AL 36130
> (334) 242-7300
> Edmund.LaCour@AlabamaAG.gov
>
> *Counsel for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Per Rule 26.1 and Eleventh Circuit Rule 26.1, the undersigned certifies that the following may have an interest in the outcome of this appeal:

1. Alabama Disabilities Advocacy Program – *Plaintiff-Appellee*;

2. Alabama NAACP – *Plaintiff-Appellee*;

3. Geiger, Soren – *Counsel for Defendant-Appellant*;

4. Greater Birmingham Ministries – *Plaintiff-Appellee*;

5. McKay, Charles – *Counsel for Defendant-Appellant*;

6. LaCour, Edmund G. Jr. – *Counsel for Defendant-Appellant*;

7. League of Women Voters of Alabama – *Plaintiff-Appellee*;

8. Marshall, Steve – *Defendant-Appellant*;

9. Mollman, Alison – *Counsel for Plaintiffs-Appellees*;

10. Proctor, R. David – *U.S. District Court Judge*;

11. Richardson, Valencia – *Counsel for Plaintiffs-Appellees*;

12. Thatte, Anuja – *Counsel for Plaintiffs-Appellees*;

13. Unger, Jess – *Counsel for Plaintiffs-Appellees*;

14. Van De Pol, Jr., William – *Counsel for Plaintiff-Appellee ADAP*.

Respectfully submitted this 4th day of October 2024.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................C1

TABLE OF CONTENTS.......................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 3

ARGUMENT ...................................................................................... 6

I.     Defendant Marshall Will Likely Win On The Merits...................................... 6

    A.  Section 208's text contains no clear statement of Congress's intent to preempt reasonable election laws like SB1. ............................... 7

    B.  SB1 does not "unduly burden" a Section 208 voter's right to receive necessary assistance from a person of the voter's choice. ........................ 13

II.    The Equities Favor A Stay. ............................................................. 17

CONCLUSION ................................................................................... 22

CERTIFICATE OF COMPLIANCE.................................................... 23

CERTIFICATE OF SERVICE ........................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
138 S. Ct. 2305 (2018)......................................................18

*Ala. Ass'n of Realtors v. HHS*,
141 S. Ct. 2485 (2021).....................................................11

*Altria Grp. v. Good*,
555 U.S. 70 (2008)............................................................9

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)........................................................11

*Bond v. United States*,
572 U.S. 844 (2014).....................................................8, 14

*Brakebill v. Jaeger*,
905 F.3d 553 (8th Cir. 2018) ........................................18

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021)........................................................15

*Chamber of Com. of U.S. v. Whitting*,
563 U.S. 582 (2011)..........................................................9

*Clark v. Martinez*,
543 U.S. 371 (2005)........................................................12

*Clingman v. Beaver*,
544 U.S. 581 (2005)........................................................10

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008)................................................. 11, 15

*CSX Transp. v. Easterwood*,
507 U.S. 658 (1993)..........................................................8

*Delgado v. Smith*,
    861 F.2d 1489 (11th Cir. 1988) ............................................................3

*DiPietrae v. City of Philadelphia*,
    666 A.2d 1132 (Pa. Commw. Ct. 1995) ..........................................13

*DNC v. Wis. State Legislature*,
    141 S. Ct. 28 (2020)................................................................ 10, 11, 14

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022)...................................................................... 14, 15

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000).........................................................................16

*Gonzales v. Carhart*,
    550 U.S. 124 (2007).........................................................................17

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
    992 F.3d 1299 (11th Cir. 2021) ................................................. 16, 19

*Hand v. Scott*,
    888 F.3d 1206 (11th Cir. 2018) ........................................................6

*Kansas v. Garcia*,
    589 U.S. 191 (2020).............................................................................8

*League of Women Voters of Fla. v. Fla. Sec'y of State*,
    81 F.4th 1328 (11th Cir. 2023) ................................................. 18, 19

*Luis v. United States*,
    578 U.S. 5 (2016)..............................................................................12

*Maracich v. Spears*,
    570 U.S. 48 (2013)............................................................................10

*Marrache v. Bacardi U.S.A., Inc.*,
    17 F.4th 1084 (11th Cir. 2021) ........................................................9

*McFadden v. United States*,
576 U.S. 186 (2016) ...................................................................12

*N.J. Payphone Ass'n v. Town of W. N.Y.*,
299 F.3d 235 (3d Cir. 2002) ......................................................11

*New Georgia Project v. Raffensperger*,
976 F.3d 1278 (11th Cir. 2020) ................................................19

*Planned Parenthood of In. & Ky. v. Comm'r of In. State Dep't of Health*,
896 F.3d 809 (7th Cir. 2018) ....................................................15

*Priorities USA v. Nessel*,
487 F. Supp. 3d 599 (E.D. Mich. 2020) ...................................13

*Purcell v. Gonzales*,
549 U.S. 1 (2006) ............................................................... 16, 18

*Qualkinbush v. Skubisz*,
826 N.E.2d 1181 (Ill. App. Ct. 2004) ......................................13

*Ray v. Texas*,
2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ...........................13

*Siegel v. LePore*,
234 F.3d 1163 (11th Cir. 2000) ................................................20

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966) ....................................................................3

*Swain v. Junior*,
958 F.3d 1081 (11th Cir. 2020). ...............................................17

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) ....................................................................9

*Trump v. IRAP*,
582 U.S. 571 (2017) ............................................................ 17, 18

*United Transp. Union v. Foster*,
 205 F.3d 851 (5th Cir. 2000) ...............................................15

*Va. Uranium, Inc. v. Warren*,
 587 U.S. 761 (2019)............................................................9, 11

*Wheat v. United States*,
 486 U.S. 153 (1988).................................................................12

*Whole Women's Health Alliance v. Hill*,
 937 F.3d 864 (7th Cir. 2019) ...............................................15

*Winter v. Natural Resources Defense Council*,
 555 U.S. 7 (2008)............................................................ 21, 22

*Wyth v. Levine*,
 555 U.S. 555 (2009)...................................................................9

## Statutes

52 U.S.C. §10508................................................2-13, 12, 15-17, 19, 20

ALA. CODE §17-11-4 ........................................................................1, 4

ALA. CODE §17-11-4(b)(1).....................................................................2

ALA. CODE §17-11-4(b)(2)......................................................................5

ALA. CODE §17-11-4-(c)(2) ....................................................................5

ALA. CODE §17-11-4(d) .....................................................................2, 16

ALA. CODE §17-11-4(d)(1).....................................................................5

ALA. CODE §17-11-4(d)(2).....................................................................5

ALA. CODE §17-11-4(e) ....................................................................5, 16

DEL. STAT. Title 15 §§7550, 7557 ......................................................10

Ga. Code Ann. §21-2-385................................................................10

Haw. Rev. Stat. §§11-139, 15-6.....................................................10

10 Ill. Comp. Stat. §5/19-5.............................................................10

KY Stat. §117.255...........................................................................11

La. Rev. Stat. §18:1309...................................................................10

Md. Elec. Code §9-308 ...................................................................10

Miss. Code Ann. §23-15-907...........................................................10

N.D. Cent. Code §16.1-07-08...........................................................10

N.H. Rev. Stat. §657:17...................................................................11

N.M. Stat. §1-12-15 ........................................................................10

Utah Code Ann. §20A-3a-208.........................................................11

W. Va. Code §3-3-4 .........................................................................11

**Other Authorities**

Pub. L. No. 97-205, 96 Stat. 131 (1982).......................................3

S. Rep. No. 97-417 (1982) .......................................... 4, 13, 15

## INTRODUCTION

Alabama, like other States, has witnessed absentee voting fraud that occurred despite existing prohibitions on fraudulent conduct. Absentee voters are particularly vulnerable to intimidation and manipulation because they cast their votes away from the polls. The State thus decided to enact an additional protection for these vulnerable voters (and ballots) by prohibiting anyone from being paid to handle a voter's absentee ballot application. Thus, family, neighbors, and public-minded volunteers could still help voters who require assistance, but those more likely to have malign motives would be sidelined.

The decision below preliminarily enjoins that commonsense protection as to some of the *most* vulnerable voters—those who are disabled, blind, or illiterate. DE76. They are now free to be targeted by paid operatives despite no evidence that any such voter needs assistance from paid operatives in order to vote. The District Court's order was legally flawed, and it presents a risk to vulnerable voters and to the security of Alabama's upcoming election. Indeed, absentee voting began on September 11. The State thus requests a stay by **October 11, 2024.**

The Alabama Legislature enacted SB1, codified at ALA. CODE §17-11-4, to safeguard the absentee ballot application process. SB1 requires applications to be submitted by the applicant ("Submission Provision"), forbids prefilling another voter's application ("Prefilling Provision"), and prohibits paid ballot application

1

harvesting—i.e., providing or receiving "a payment or gift for distributing, ordering, requesting, collecting, completing, prefilling, obtaining, or delivering a voter's absentee ballot application." *Id.* §17-11-4(d) ("Compensation Provision"). Violations carry criminal penalties. Still, for those who qualify, applying for an absentee ballot is easy, and anyone "may receive assistance in filling out the application as he or she desires," consistent with existing law. *Id.* §17-11-4(b)(1).

The District Court enjoined Defendant Marshall from enforcing the Submission and Compensation Provisions in situations involving disabled, blind, or illiterate voters who require assistance. The court reasoned that §208 of the Voting Rights Act facially preempts SB1, even though §208's text, according to the District Court, is "ambiguous" in its scope. But ambiguous text cannot preempt State law.

Because of this and other reversible errors, this Court is likely to vacate the District Court's injunction, and so should stay that injunction pending appeal. Defendant Marshall cannot enforce this election integrity law during an ongoing election. The public interest is in keeping bad actors with ulterior motives away from vulnerable voters. To protect voters now while this case proceeds on appeal, Defendants request that this Court act upon their stay request by **October 11, 2024.**

# BACKGROUND

## Legal Background

Congress enacted the Voting Rights Act of 1965 "to rid the country of racial discrimination in voting." *South Carolina v. Katzenbach,* 383 U.S. 301, 315 (1966). To ensure "the integrity of the registration and voting process by eradicating" barriers to voting, Congress gradually "extended the Act's coverage" to cover other "minority groups." *Delgado v. Smith*, 861 F.2d 1489, 1492 (11th Cir. 1988). Then, "in 1982, Congress amended the Act" to protect the voting rights of "the blind and disabled, and others who may be unable to cast their vote without help." *Id*. These amendments included Section 208, which provides in full: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." Pub. L. No. 97-205, 96 Stat. 131, 135 (1982) (codified at 52 U.S.C. §10508).

Section 208 does not specify the scope of permissible voting assistance or how that assistance is to be provided. It simply guarantees that "*any* voter who requires assistance" for one of three reasons can receive "assistance by *a* person of the voter's choice." 52 U.S.C. §10508 (emphasis added). Congress immediately excluded two categories of persons as potential assistors for Section 208 voters. A voter may not receive assistance from his "employer" or an "officer" in his union, for obvious

reasons, *id.*—they present the risk of "undu[e] influence[ ]," and "intimidation or manipulation of the voter." S. Rep. No. 97-417, at 62.

The Senate Judiciary Committee report accompanying the 1982 amendments explained that "the blind, the disabled, and those who either do not have a written language or who are unable to read or write" often need assistance to exercise their right to vote. *Id.* at 62. Yet, due to "their need for assistance," these citizens are "more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Id.* The Committee recognized that "the manner of providing assistance has a significant effect on the free exercise of the right to vote by such" vulnerable voters. *Id.* It concluded that blind, disabled, and illiterate voters must be permitted "to bring into the voting booth a person whom the voter trusts and who cannot intimidate him." *Id.* Thus, the Senate Committee described Section 208 as recognizing "the individual's right to choose a trustworthy assistant." *Id.* at 64.

Section 208 left States to identify methods of "assistance" and categories of assistors that might be untrustworthy. According to the Senate Report, states retain the authority "to establish necessary election procedures … to protect the rights of voters." *Id.* at 63.

**Factual Background**

On March 20, 2024, Governor Kay Ivey signed Senate Bill 1 into law. *See generally* ALA. CODE §17-11-4. The Submission Provision makes it "unlawful for

an individual to submit a completed absentee ballot application to the absentee election manager" that is not "his or her own." *Id*. §17-11-4-(c)(2). Under the Compensation Provisions, it is a Class C felony for "a third party to knowingly receive a payment or gift for distributing, ordering, requesting, collecting, prefilling, obtaining, or delivering a voter's absentee ballot application." *Id*. §17-11-4(d)(1). It is a Class B felony "for a person to knowingly pay or provide a gift to a third party to distribute, order, request, collect, prefill, complete, obtain, or deliver a voter's absentee ballot application." *Id*. §17-11-4(d)(2).

Additionally, "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by an individual of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." *Id*. §17-11-4(e).

**Procedural History**

On May 2, 2024, Plaintiffs sought a preliminary injunction against enforcement of the Submission Provision and Compensation provisions, alleging they are in conflict with and preempted by Section 208.[1] In opposition to the motion, Defendant Marshall submitted four declarations by three election officials and one retired

---

[1] The District Court dismissed with prejudice five of Plaintiffs' six counts for failure to state a claim. *See* DE69. In allowing the Section 208 claim (Count V) to proceed, the Court held that the Prefilled-Application Provision, ALA. CODE §17-11-4(b)(2), was not preempted by federal law. *Id*. at 64.

prosecutor, as well as data on the disability characteristics in Alabama. *See* DE73. Plaintiffs then submitted declarations from four Section 208 voters and one paid ADAP employee. *See* DE74.

On September 24, 2024, the District Court determined an evidentiary hearing on the Section 208 claims was unnecessary and issued the preliminary injunction. On October 4th, the District Court denied Defendant's motion for a stay. *See* DE84.

## ARGUMENT

Stays pending appeal turn on likely success on the merits, irreparable harm to the applicant, substantial injury to interested parties, and the public interest. *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). Here, all four factors favor relief that preserves the status quo.

## I. Defendant Marshall Will Likely Win On The Merits.

Section 208 of the Voting Rights Act states that "*any* voter" who is disabled, blind, or unable to read or write and who "requires assistance" may choose "*a* person" to help them exercise their right to vote. 52 U.S.C. §10508 (emphasis added). Informed by fundamental principles of statutory interpretation, the text's meaning is clear: disabled, blind, and illiterate persons navigating the voting process must be allowed to choose *a* trustworthy assistor. In Alabama, §208 voters retain that right to choose under SB1, which prohibits one carefully defined type of absentee voting assistance—handling a voter's absentee ballot application in return for payment.

This reasonable measure bolsters election integrity by mitigating the risk of fraud and protecting all voters, including the most vulnerable, from confusion, intimidation, and undue influence.

The District Court, after finding the text of §208 "ambiguous," nevertheless enjoined enforcement of SB1's Submission and Compensation provisions as facially preempted whenever a disabled, blind, or illiterate voter requires assistance. On the merits, the court's error was at least twofold. *First*, the court sidestepped the presumption against preemption by enjoining SB1 based solely on §208's legislative history, not its text. *Second*, the court held that SB1 "unduly burdens" the §208 voter's right to choose without examining any evidence to justify that conclusion; indeed, no such evidence exists in this record. This Court will likely vacate the District Court's injunction.

### A. Section 208's text contains no clear statement of Congress's intent to preempt reasonable election laws like SB1.

Before the District Court, the parties agreed that §208 provides certain voters a right to assistance, but disputed the scope of that right. Plaintiffs argued that the text of §208 establishes a "fixed universe" of assistors, forbidding the States from excluding "any" would-be assistor except for the two categories explicitly contemplated in the text: "union and employer representatives." DE50 at 42, 46; DE62 at 104:22, 107:1, 108:22-23, 117:7. Defendant Marshall contended that so long as disabled voters requiring assistance are able to choose "a" trustworthy helper, States

retain the authority to enact reasonable laws designed to protect voter rights and election integrity, like a law prohibiting a candidate for office from casting a ballot for a blind voter or a law barring paid ballot harvesters from handling a voter's absentee ballot application. *See, e.g.*, DE46 at 13-14; DE67 at 4-5. With §208, Congress intended to compliment such laws, not preempt them.

The District Court found the text of §208 "ambiguous," specifically the phrase "a person of the voter's choice," and more specifically the indefinite article "a." DE76 at 4; *see also* DE69 at 50, 51 n.12. To the court, whether §208 confers the right to choose *anyone* or *someone* to assist is a question the text does not clearly answer. *See* DE69 at 52 (finding that "the text does not plainly indicate how this federal statute should operate with state laws governing election procedures (like SB1)").

The court should have rejected Plaintiffs' preemption claim then and there, because "all preemption arguments[] must be grounded 'in the text and structure of the statute at issue.'" *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) (quoting *CSX Transp. v. Easterwood*, 507 U.S. 658, 664 (1993)). Instead, the court turned to legislative history in search of the clarity lacking in the text. DE76 at 4. Purporting to find in the history Congress's "clear statement" to "preempt state law," *Bond v. United States*, 572 U.S. 844, 859 (2014), the District Court committed reversable legal error.

*First*, the District Court paid only lip service to the presumption against preemption, which "applies with particular force" when the challenged law relates to "a field traditionally occupied by the States," *Altria Grp. v. Good*, 555 U.S. 70, 797 (2008), like the "regulation[] of parties, elections, and ballots," *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). The "historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1095 (11th Cir. 2021). "Congress does not cavalierly pre-empt" state law, *Wyth v. Levine*, 555 U.S. 555, 565 n.3 (2009), by hiding its "clear and manifest purpose" to do so in the legislative history. Whatever purchase these "abstract and unenacted legislative desires" may have in other contexts, they do not support preemption of state law. *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (lead op.); *see also Chamber of Com. of U.S. v. Whitting*, 563 U.S. 582, 599 (2011).

*Second*, the District Court's mistake on preemption doctrine leads to admittedly "uncomfortable" results. At the hearing on Defendant's motion to dismiss, the Court asked Plaintiffs' counsel if, under their interpretation, a person convicted of voter fraud could be barred from providing voting assistance: "that wouldn't violate Section 208, would it?" DE62 at 123:23-24. Plaintiffs' counsel dug in, maintaining that "it could violate 208 if there was some voter out there who would have chosen that person to assist him," while proceeding to admit that this view "could create

9

hypotheticals that become uncomfortable." *Id*. at 124:1-2, 23-24. This interpretation, lacking a "limiting principle," "provides little guidance" and will "stop nowhere." *Maracich v. Spears*, 570 U.S. 48, 60 (2013). Yet this is the interpretation adopted by the District Court, even though it is far from clear that Congress intended such an "uncomfortable" result.

Courts should be wary of accepting an interpretation of federal law that would "compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). Yet the District Court's reading of §208 would require States to allow disabled voters to invite convicted fraudsters, political candidates, foreign agents, or paid operatives into the voting process with them. That amounts to a "*de facto* green light to federal courts to rewrite dozens of state election laws around the country." *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurral). If permitted to stand, this will cast doubt on ordinary ballot-casting laws nationwide in addition to Alabama's. *See, e.g.*, DEL. STAT. Title 15 §§7550, 7557 (prohibiting election officials, candidates, and candidate's campaign staff from assisting); GA. CODE ANN. §21-2-385 (prohibiting candidate and candidate's close relatives from assisting); N.D. CENT. CODE §16.1-07-08 (same); HAW. REV. STAT. §§11-139, 15-6 (prohibiting candidate from assisting); 10 ILL. COMP. STAT. §5/19-5 (same); LA. REV. STAT. §18:1309 (same); MD. ELEC. CODE §9-308 (same); N.M. STAT. §1-12-15 (same); MISS. CODE ANN. §23-15-907 (prohibiting candidates,

candidate's close relatives, and poll watchers from assisting); UTAH CODE ANN. §20A-3a-208 (same); W. VA. CODE §3-3-4 (same); KY STAT. §117.255 (prohibiting election officials from assisting); N.H. REV. STAT. §657:17 (prohibiting "delivery agent" from delivering "more than 4 absentee ballots in any election").

This invitation for federal takeover, *cf.* Federalist No. 59, cannot be reconciled with the Supreme Court's repeated recognition that "evenhanded restrictions that protect the integrity and reliability of the electoral process itself" are not constitutionally suspect. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-90 (2008) (plurality op.) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)); *Wis. State Legislature*, 141 S. Ct. at 33 (Kavanaugh, J., concurral) ("The Court has long recognized that a State's reasonable deadlines for registering to vote, requesting absentee ballots, submitting absentee ballots, and voting in person generally raise no federal constitutional issues …."). Indeed, the constitutional dimensions of any preemption case *heighten* the need for restrained statutory interpretation. *Va. Uranium*, 587 U.S. at 773, 775-76, 778-79; *N.J. Payphone Ass'n v. Town of W. N.Y.*, 299 F.3d 235, 248-49 (3d Cir. 2002) (Alito, J., concurring). Because §208 contains no "exceedingly clear language" that would require such upheaval of the federal-state balance, the presumption against preemption mandates that courts steer clear of expanding §208's reach beyond that which it clearly regulates. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021).

*Third*, the District Court rejected a "plausible reading" that avoids these "serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381, 384 (2005). Section 208 is one sentence long, begins with the phrase "*Any* voter," and a few words later uses the phrase "*a* person." 52 U.S.C. §10508 (emphasis added). Plaintiffs read "a person" to mean "any person." DE50 at 45-46. Defendant reads "a person" to mean what it says: "a person," i.e. "some undetermined or unspecified" person. *McFadden v. United States*, 576 U.S. 186, 191 (2016). Under §208's plain meaning, then, a disabled voter's right to "be given assistance by *a person* of the voter's choice" is not infringed unless the State prevents a disabled voter from selecting *a* trustworthy assistor.[2] That could take a number of shapes, like categorically banning illiterate voters from receiving assistance, qualifying election officials alone as assistors, or limiting the number of permitted assistors such that a disabled voter is effectively left assistor-less. Of course, SB1 nowhere near approaches these schemes long since rooted out by the Voting Rights Act.

As several federal and state courts have recognized, Defendant's reading reflects the plain meaning of §208's text. *See Priorities USA v. Nessel*,

---

[2] The "right to choose" is not without some reasonable restriction in other familiar contexts. For example, "the Sixth Amendment grants a defendant 'a fair opportunity to secure counsel *of his own choice*,'" but that right "has limits," *Luis v. United States*, 578 U.S. 5, 11 (2016) (plurality opinion) (quotations omitted) (emphasis added)), and "is circumscribed in several important respects," *Wheat v. United States*, 486 U.S. 153, 169 (1988). The same must be true here.

487 F. Supp. 3d 599, 619 (E.D. Mich. 2020) (Section 208's "language suggests that some state law limitations on the identity of persons who may assist voters is permissible."), *rev'd in part on other grounds*, 860 F. App'x 419 (6th Cir. 2001); *see also Ray v. Texas*, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008) ("The language of Section 208 allows the voter to choose a person who will assist the voter, but it does not grant the voter the right to make that choice without limitation" nor does it "preclude all efforts by the State to regulate elections by limiting the available choices to certain individuals."); *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1197 (Ill. App. Ct. 2004) (upholding Illinois law limiting who may return absentee voter's ballot against §208 preemption challenge); *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1135-36 (Pa. Commw. Ct. 1995) (upholding law barring anyone from returning absentee ballots for more than one household).

**B.     SB1 does not "unduly burden" a Section 208 voter's right to receive necessary assistance from a person of the voter's choice.**

Looking past §208's text, the District Court discerned, based on the "legislative history" alone, that Congress intended to preempt "state laws which 'unduly burden the right recognized in [Section 208].'" DE76 at 4 (quoting S. Rep. No. 97-417, at 63 (1982) (District Court's alteration)). The court then decided as a matter of law that, on its face, "SB 1 unduly burdens the rights of Section 208 voters to make a choice about who may assist them in obtaining and returning an absentee ballot." *Id.* The court committed at least four reversible errors.

*First*, the Court adopted an ambiguous test notorious for generating "confusion and disagreement." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 283 (2022). "Undue burden" tests are "inherently standardless," "unworkable," and "perpetuate give-it-a-try litigation." *Id.* at 281, 286 (quotations omitted). Worse still, these tests "undermine, not advance, the evenhanded, predictable, and consistent development of legal principles." *Id.* at 286 (quotations omitted). When applied to preempt a State's sovereign power to regulate elections, they reflect the "belief that federal judges know better than state legislators about how to run elections," *Wis. State Legislature*, 141 S. Ct. at 35 (Kavanaugh, J., concurral). Courts must be "certain of Congress's intent before finding that federal law overrides the usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858 (2014) (quotations omitted). Reference to an unworkable test in a statute's legislative history cannot provide that certainty.

*Second*, after adopting this test, the District Court explicitly decried the need to examine any evidence of the burdens SB1 allegedly imposes on disabled voters, weighed against the legitimate interests the law advances. *See* DE76 at 4 (deciding that "because preemption is a question of law, the court need only look at the legal basis for the claim"); *id.* at 9 (declaring that evidentiary submissions are "unnecessary to the court's injunctive relief determination"); *id.* at 9, 11 (finding that the burden on the right to choose is "obvious" and a matter of "common sense").

That's not how "undue burden" tests work. Whether a State law imposes an undue burden on the exercise of some federal right is always a fact-dependent inquiry.[3] For example, in the pre-*Dobbs* abortion access context and the current "dormant" Commerce Clause framework, the test requires courts "to consider the evidence in the record." *Planned Parenthood of In. & Ky. v. Comm'r of In. State Dep't of Health*, 896 F.3d 809, 818 (7th Cir. 2018); *see also United Transp. Union v. Foster*, 205 F.3d 851, 863 (5th Cir. 2000) (remanding in light of "record … devoid of any evidence" about whether State law "would create an undue burden on interstate commerce"). As one court put it, the "undue-burden inquiry requires a holistic, rigorous, and independent judicial examination of the facts of a case to determine whether the burdens are undue in light of the benefits the state is permitted to pursue." *Whole Women's Health Alliance v. Hill*, 937 F.3d 864, 876 (7th Cir. 2019). The same is true in voting rights cases. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (concluding, based on the evidentiary record, that Indiana's voter ID law did not impose "excessively burdensome requirements" on the right to vote); *see also Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 682-85 (2021) (finding that "more concrete evidence" was required to show "a disparate

---

[3] For its part, the Senate Report states that the § 208 preemption inquiry is "a practical one dependent upon the facts." S. Rep. 97-417, at 63.

burden" caused by Arizona's "out-of-precinct policy"); *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1320 (11th Cir. 2021).

*Third*, the evidence presented by the parties and deemed irrelevant by the District Court shows that any alleged burden imposed by SB1 is not "undue." SB1 erects no barrier for §208 voters to receive necessary assistance from people voters actually choose as helpers—namely, spouses, family members, caregivers, neighbors, nurses, and volunteers. Indeed, *anyone* can assist a §208 voter, just not in exchange for cash or gifts. For example, each of Plaintiffs' declarants have ready and willing assistors, such as personal caregivers, who are not compensated for handling "a voter's absentee ballot application." ALA. CODE §17-11-4(d); DE74-1 ¶ 8; DE74-2 ¶ 8; DE74-3 ¶ 6; DE74-4 ¶ 3. SB1 stands as no obstacle to their right to choose and receive help from these trustworthy assistors. *See* DE73-2 ¶¶17-18; DE73-3 ¶¶14. And as to SB1's Submission Provision, any "voter who requires assistance" with submission can receive it. *See* ALA. CODE §17-11-4(e). Based on the evidence presented, SB1 "would affect so few" assistors preferred by §208 voters "that its rule of law" does "not create a legal 'obstacle' to" §208's objective. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000). Meanwhile, SB1's goals are firmly grounded in Alabama's "compelling interest[s] in preserving the integrity of its election process" and "in preventing voter fraud." *Purcell v. Gonzales*, 549 U.S. 1, 4 (2006) (per

curiam). The evidence reveals no undue burden and thus no conflict between SB1 and §208.

*Fourth*, the District Court erred by enjoining SB1 as facially preempted when as-applied challenges are the proper course to remedy any alleged infringement of a disabled voter's §208 right to choose an assistor. There is no evidence that SB1 "will prohibit the vast majority" of §208 voters from receiving the assistance they need from the person of their choosing. *Gonzales v. Carhart*, 550 U.S. 124, 156 (2007). "Alternatives are available" to receiving voting assistance from a paid ballot harvester. *Id.* at 165. Further, "there is uncertainty over whether" paid assistance "is ever necessary" to protect a disabled individual's right to vote. *Id.* at 166. Thus, the "Act is not invalid on its face." *Id.* Instead, an as-applied challenge would be the "proper means" to consider whether SB1 unduly burdens a §208 voter's right to choose a trustworthy assistor. *Id.* at 167.

## II.    The Equities Favor A Stay.

When deciding whether to stay a preliminary injunction, this court must make its "own" "equitable judgment." *Trump v. IRAP*, 582 U.S. 571, 580 (2017). As a State official, Defendant Marshall's "interest and harm merge with the public interest." *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020). Because the Submission and Compensation Provisions prohibit practices that threaten §208 voters' right to vote, while still affording those voters an assistor of their choice, "the relative harms"

and "the interests of the public at large" overwhelmingly favor staying the District Court's preliminary injunction. *IRAP*, 582 U.S. at 580.

**A.** Absent a stay, Defendant and the people of Alabama will be irreparably harmed. The "inability to enforce" a "duly enacted" state law "clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). Also, a "State indisputably has a compelling interest in preserving the integrity of its election process," *Purcell v. Gonzales,* 549 U.S. at 4, and the District Court joined other federal courts in recognizing that "voter fraud may be a problem" in Alabama. DE69 at 42. Still, the District Court discounted the irreparable harm of its injunction, reasoning that the "injunction does not in any way prevent Alabama from prosecuting voter fraud when it occurs." DE76 at 12.

The State, however, has a compelling interest in preventing voter fraud and intimidation *before* it occurs. *League of Women Voters of Fla. v. Fla. Sec'y of State*, 81 F.4th 1328, 1333-34 (11th Cir. 2023) (en banc) (explaining legislatures are entitled to enact "legislation that aims to prevent future fraud."). Prosecution of fraudulent actors after they steal votes fails to adequately remedy the harm they inflict. *See Brakebill v. Jaeger*, 905 F.3d 553, 560 (8th Cir. 2018) ("Even if the State can prosecute fraudulent voters after the fact, it would be irreparably harmed by allowing them to vote in the election."). It is indisputable that the State may act prophylactically to prevent fraud and intimidation. *See, e.g.*, *Greater Birmingham*

*Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1334 (11th Cir. 2021) ("[D]eterring voter fraud is a legitimate policy on which to enact an election law, even in the absence of any record evidence of voter fraud.").

According to the District Court, there was "undisputed" evidence establishing "the presence of voter fraud in Alabama." DE76 at 12. There was also evidence "that Section 208 voters can vote with the assistance of unpaid people, including family, friends, and neighbors, as well as the Managers themselves." *Id*. This "show[ed] that some voters with disabilities can obtain assistance that is not prohibited by SB 1." *Id*. The District Court acknowledged that "Section 208 voters perhaps can choose people not within the scope of SB 1 to assist them." *Id*. at 13 n.1. Moreover, "the record before the District Court contained undisputed evidence that" ballot harvesting operations have targeted Alabama's electorate. *League of Women Voters*, 81 F.4th at 1334; *see* DE73-2 ¶14, 15, 22; DE73-3 ¶7. Unless the preliminary injunction is stayed, "all will" *not* have to "play by the same, legislatively enacted rules" in the upcoming election. *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020). That injury is serious and irreparable, and not remedied by post-election prosecutions for fraud.

The public suffers when third-party operatives are permitted to commandeer the voting process for citizens who need a trustworthy assistant. This harm is exacerbated in the context of absentee voting, where an assistor taking payment to handle

a disabled voter's absentee ballot application may "work the absentee" in seclusion and secrecy. DE73-2 ¶16. Less educated voters who struggle to read or write and may "not understand the process" for absentee voting but "always" vote "at the polls," DE 73-1 ¶ 22, should be protected from ballot harvesters.[4]

The public interest is in protecting that vulnerable voter and the electoral process by taking steps to ensure that people with an ulterior motive (e.g., money), are not handling voters' absentee ballot applications.

**B.** Full enforcement of SB 1 protects the absentee voting process without irreparably injuring Plaintiffs or their members. Plaintiffs' own evidence reveals that no Section 208 voter is "suffering serious harm or facing imminent injury." *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000). Plaintiffs' declarations showed "how four Section 208 voters in Alabama would be deprived of the assistors of their choice due to the Payment and Gift Provisions" possibly being enforced against neighbors and volunteers. DE76 at 11. The court found that these declarations illustrated "the very harm that Section 208 envisions—that voters with disabilities are unable to vote because they are denied the assistance they need." *Id*. at 12.

---

[4] The District Court considers the injunction "applicable to only a small subset of potential voters," DE84 at 1, but Plaintiffs' own evidence shows Section 208 voters likely comprise a huge swath of the electorate. DE82 at 14 ("30% of all adults (or about 1.5 million people) in Alabama have some form of disability."); *id*. at 15 ("24% of Alabamians aged 16 and older have below basic literacy").

Yet, each declarant with a disability has someone nearby, such as a neighbor, mother, or caregiver, who can help them navigate the absentee voting process. DE74-1 ¶8; DE74-2 ¶8; DE74-3 ¶6; DE74-4 ¶3. The relative ease with which disabled voters can apply to vote absentee is corroborated by the absentee election managers' declarations. Voters residing in assisted living or nursing home facilities commonly receive voting assistance from nurses, staff, and other residents. DE73-2 ¶¶17-18; DE73-3 ¶¶14. Others receive help from a family member, friend, caregiver, or a volunteer assistant. DE73-2 ¶¶9, 11, 19, DE73-3 ¶¶13-14, 16. And every county's absentee election manager is always available and willing to assist with the absentee voting process. DE73-2 ¶¶20-21; DE73-3 ¶¶11-12.

The District Court suggested that SB 1 would render disabled citizens "unable to vote because they are denied the assistance they need." *E.g.*, DE76 at 12. While deprivation of the right to vote is an irreparable harm, a court cannot simply assume that the harm will arise. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) (explaining "a possibility of irreparable harm" is insufficient to warrant preliminary injunctive relief). The District Court, however, determined that "evidentiary submissions are not necessary to show irreparable harm here." DE76 at 11. Without finding that at least one person's right to vote hinged on "assistors" paid or given gifts to handle absentee ballot applications, it cannot be said the "irreparable

injury"—i.e., disenfranchisement—"is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22.

## CONCLUSION

The Court should stay the District Court's injunction pending appeal.

October 4, 2024                      Respectfully submitted,

                                            Steve Marshall
   *Attorney General*

                     s/ Edmund G. LaCour Jr.
                     Edmund G. LaCour Jr.
   *Solicitor General*

Soren Geiger
   *Assistant Solicitor General*

Charles McKay
   *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130-0152
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27 because it contains 5,120 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: October 4, 2024

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.

**CERTIFICATE OF SERVICE**

I certify that on October 4, 2024, I electronically filed this document using the

Court's CM/ECF system, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Amici Curiae*
