No. 24-13111

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

ALABAMA STATE CONFERENCE OF THE NAACP, ET AL.,

*Plaintiffs-Appellees,*

*-v-*

ATTORNEY GENERAL OF THE STATE OF ALABAMA, in his official capacity,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of Alabama, No. 2:24-CV-420-RDP

## PLAINTIFFS-APPELLEES' OPPOSITION TO TIME SENSITIVE MOTION FOR STAY PENDING APPEAL

ANUJA D. THATTE
DEUEL ROSS
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
athatte@naacpldf.org

SAMUEL SPITAL
TIFFANI BURGESS
URUJ SHEIKH
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10007
(212) 965-2200

VALENCIA RICHARDSON
DANIELLE M. LANG
ALICE C. HULING
ELLEN BOETTCHER
REGINALD THEDFORD
SHILPA JINDIA
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 662-8600

ALISON MOLLMAN
LAUREL A. HATTIX
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106
(703) 342-9729

***(Additional counsel on next page)***

*(Counsel listing continued from first page)*

BRADLEY E. HEARD
SABRINA KHAN
JESS UNGER
AHMED SOUSSI
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700

WILLIAM VAN DER POL, JR.
LARRY G. CANADA
ALABAMA DISABILITIES ADVOCACY
PROGRAM
UNIVERSITY OF ALABAMA
Box 870395
Tuscaloosa, AL 35487
(205) 348-4928

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Rule 26.1 and Eleventh Circuit Rule 26.1-1, I certify that, to the best of my knowledge, the individuals and entities names in the Certificate of Interested Persons contained in the previous briefs filed by Defendant-Appellant and Amici Curiae reflect a complete list of interested persons except the following additional persons:

1. Badat, Amir – *Counsel for Plaintiffs-Appellees*;

2. Boettcher, Ellen – *Counsel for Plaintiffs-Appellees*;

3. Burgess, Tiffani – *Counsel for Plaintiffs-Appellees*;

4. Canada, Larry G. – *Counsel for Plaintiffs-Appellees*;

5. Jindia, Shilpa – *Counsel for Plaintiffs-Appellees*;

6. Khan, Sabrina – *Counsel for Plaintiffs-Appellees*;

7. Lang, Danielle – *Counsel for Plaintiffs-Appellees*;

8. Hattix, Laurel – *Counsel for Plaintiffs-Appellees*;

9. Heard, Bradley E. – *Counsel for Plaintiffs-Appellees*;

10. Huling, Alice C. – *Counsel for Plaintiffs-Appellees*;

11. Ross, Deuel – *Counsel for Plaintiffs-Appellees*;

12. Sheikh, Uruj – *Counsel for Plaintiffs-Appellees*;

13. Spital, Samuel – *Counsel for Plaintiffs-Appellees*;

14. Soussi, Ahmed – *Counsel for Plaintiffs-Appellees*

15. Thedford, Reginald – *Counsel for Plaintiffs-Appellees*.

I further certify that Alabama State Conference of the NAACP, League of Women Voters of Alabama, League of Women Voters of Alabama Action Fund, Greater Birmingham Ministries, and Alabama Disabilities Advocacy Program have no parent corporations or any other publicly held corporations that own 10% or more of their stock. Alabama State Conference of the NAACP is a state conference of branches of the national NAACP.

Respectfully submitted this 9th day of October, 2024.

<u>/s/ Anuja D. Thatte</u>
Anuja D. Thatte

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.....................................................C-1

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES.................................................................. ii

INTRODUCTION .................................................................................1

LEGAL STANDARD ............................................................................4

ARGUMENT .......................................................................................4

I.   Alabama is Highly Unlikely to Succeed on the Merits. .....................4

    A.  Section 208 Preempts SB1's Submission Restriction and Payment and Gift Provisions................................................................4

    B.  Nothing About the "Limited Injunction" Here Affects Alabama's Asserted Interest in Addressing Voter Fraud. .............................15

II.  Alabama Cannot Meet Its Burden on Any of the Remaining Factors..............17

    A.  Alabama Suffers No Injury from the Injunction. ........................17

    B.  Plaintiffs and 208 Voters Will Be Irreparably Harmed by a Stay. .............19

    C.  The Public Interest Cannot Favor a Stay.....................................20

CONCLUSION ...................................................................................20

CERTIFICATE OF COMPLIANCE.......................................................23

CERTIFICATE OF SERVICE ...............................................................24

**Page(s)**

**Cases**

*Ark. United v. Thurston*,
  626 F. Supp. 3d 1064 (W.D. Ark. 2022) ...............................................6, 8, 11, 16

*Bond v. United States*,
  572 U.S. 844 (2014) ..................................................................................................6

*Boyes v. Shell Oil Prod. Co.*,
  199 F.3d 1260 (11th Cir. 2000) ...............................................................................5

*Carey v. Wisc. Elections Comm'n.*,
  624 F. Supp. 3d 1020 (W.D. Wis. 2022) .........................................................6, 16

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
  408 F.3d 1349 (11th Cir. 2005) .............................................................................19

*Club Madonna Inc. v. City of Miami Beach*,
  42 F.4th 1231 (11th Cir. 2022) ................................................................................8

*Democracy N.C. v. N.C. State Bd. of Elections*,
  590 F. Supp. 850 (M.D.N.C. 2022) ..................................................................6, 16

*DiPietrae v. City of Philadelphia*,
  666 A.2d 1132 (Pa. Commw. Ct. 1995), *aff'd*, 673 A.2d 905 (Pa.
  1996) .......................................................................................................................10

*Disability Rts. N.C v. N.C. State Bd. of Elections.*,
  602 F. Supp. 3d 872, 878 (E.D.N.C. 2022) ............................................................7

*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
  No. 21 Civ. 361, 2022 WL 2678884 (E.D.N.C. July 11, 2022) .........6, 11, 15, 16

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
  691 F.3d 1250 (11th Cir. 2012) .............................................................................19

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) ................................................................................................14

*Gonzalez v. Kemp*,
  470 F. Supp 3d 1343 (N.D. Ga. 2020), *aff'd sub nom. Gonzalez v. Governor of Ga.*, 978 F.3d 1266 (11th Cir. 2020)..............................19

*Hillman v. Maretta*,
  569 U.S. 483 (2013)....................................................................8

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019)...............................................................5

*League of Women Voters of Ohio v. LaRose*,
  No. 23 Civ. 2414, 2024 WL 3495332
  (N.D. Ohio July 22, 2024) ................................ 6, 7, 9, 10, 11, 16, 18

*Lewis v. Brunswick Corp.*,
  107 F.3d 1494 (11th Cir. 1997) .................................................5

*Lopez v. Monterey Cnty.*,
  525 U.S. 266 (1999).....................................................................8

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022)...............................................................20

*Nken v. Holder*,
  556 U.S. 418 (2009)...................................................................4

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ........................................6, 8, 10, 11, 16

*Priorities USA v. Nessel*,
  628 F. Supp. 3d 716 (E.D. Mich. 2022) ....................................9

*Ray v. Texas*,
  No. 06 Civ. 385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ....................9

*Thornburg v. Gingles*,
  478 U.S. 30 (1986)......................................................................9

*United States v. Alabama*,
  691 F.3d 1269, 1301 (11th Cir. 2012) ....................................20

*United States v. Alabama*,
  778 F.3d 926 (11th Cir. 2015) ....................................................7

iii

**Statutes**

52 U.S.C. § 10307 .................................................................15

52 U.S.C. § 10310(c)(1) ...........................................................2

*52 U.S.C. § 10508 ..............................................................1, 2

Ala. Code § 17-11-4(c)(2) ...................................................1, 2, 12

Ala. Code § 17-11-4(d)(1)-(d)(2) ............................................1, 2, 12

Ala. Code § 17-17-33 ...........................................................15

Ala. Code § 17-17-38 ...........................................................15

Ala. Code § 17-17-39 ...........................................................15

**Other Authorities**

*S. Rep. 97-417 (1982) .....................................................2, 3, 5, 9

# **INTRODUCTION**

Alabama's Motion for Stay portrays this case as something it is not. As Chief Judge David Proctor twice explained, the District Court issued a "limited" injunction that "still allows Defendant to ferret out and prosecute fraud and all other election crimes involving any voter or assistor," Doc. 84 at 10;[1] *see* Doc. 76 at 7, so long as Alabama does not infringe upon the decades-old right of disabled, blind, and low literacy voters to "assistance by a person of the voter's choice." 52 U.S.C. § 10508. Notwithstanding Alabama's efforts to obscure the matter, the pure legal issue before the Court is simple: Does the text of Section 208 of the Voting Rights Act ("VRA") preempt Alabama Senate Bill 1 ("SB1")? The answer is plainly yes.

SB1 is a sweeping law that criminalizes *anyone* returning another person's absentee ballot application (the "Submission Restriction"), Ala. Code § 17-11-4(c)(2), as well as *anyone* accepting or providing a payment or gift for assisting with nearly any step in applying to vote absentee (the "Payment or Gift Provisions"), Ala. Code § 17-11-4(d)(1)-(d)(2). Despite Alabama's misrepresentations, the Submission Restriction makes it a crime for any person—*e.g.*, "spouses, family members, caregivers, neighbors, nurses, and volunteers" who "voters actually choose as helpers," *cf.* Def.'s Mot. for Stay Pending App., ECF 13-2 ("Def.'s Mot.") at 16—to even drop another's absentee ballot application in the mail, Ala. Code § 17-11-

---

[1] "Doc." refers to the District Court docket. "ECF" refers to this Court's docket.

4(c)(2). As Judge Proctor asked, "How, then, are blind voters or disabled voters with mobility restrictions to return their absentee ballot applications? Under SB1's Submission Restriction, *no one* can assist them in this way." Doc. 69 at 54 (emphasis original). Under the Payment and Gift Provisions, even paid caregivers or family and friends who receive token gifts—like a pen, gas money, or food from a disabled voter themselves—can face felony prosecution. Ala. Code §§ 17-11-4(d)(1)-(d)(2).

SB1 plainly violates Section 208. It impermissibly denies disabled, blind, and low literacy voters "assistance by a person of the voter's choice," 52 U.S.C. § 10508, that is "necessary to make [their] vote effective," 52 U.S.C. § 10310(c)(1); *accord* Doc. 84 at 9. Absentee application assistance is fundamental to these voters' right to vote and dignity in doing so, consistent with Section 208's core purpose to give them "the same opportunity to vote enjoyed by all citizens." S. Rep. 97-417, at 62 (1982).

For example, declarant Lauren Faraino cannot use her arms and, therefore, physically cannot submit her absentee ballot application without help from someone to place it in an envelope and the mailbox. Doc. 74-3 ¶¶ 2, 5. Dr. Eric Peebles has cerebral palsy and quadriplegia, meaning he needs (and prefers) the assistance of compensated volunteers or his paid caregivers to complete the absentee application process. Doc. 74-4 ¶ 6. Disabled, homebound couple Louis Courie and Terry McKee attested that, without the assistance of a compensated volunteer who they know and trust, "[they] will not be able to vote." Doc. 74-1 ¶ 11; Doc. 74-2 ¶ 11. As Judge

Proctor correctly found in granting the limited relief at issue, these are "exactly the type of circumstances that are obvious to anyone who considers the practical and legal effects of eliminating or limiting a Section 208 voter's choice" and "illustrate the very harm that Section 208 envisions – that voters with disabilities are unable to vote because they are denied the assistance they need." Doc. 76 at 11.

Beyond the merits, Alabama also cannot meet its burden on any other stay factor. SB1 "obvious[ly]" denies Section 208 voters the assistor of their choice and the "injunction does not in any way prevent Alabama from prosecuting voter fraud"—conduct which is *not* assistance of the voter's "choice." Doc. 76 at 11-12; *see* Doc. 84 at 10. The injunction does, however, respect the choices of Section 208 voters and removes the real fear of prosecution from Plaintiff-Organizations called to assist Section 208 voters and others like family, friends, and caregivers whom Alabama concedes also "commonly" assist them. Def.'s Mot. at 21. Moreover, in enacting Section 208, Congress sought to balance the rights of vulnerable voters with states' interest in preventing voter fraud. *See* Doc. 84 at 8; S. Rep. 97-417, at 62. "While the harm to [Section 208] voters will be great if these provisions are not enjoined, Alabama will not suffer harm in enforcing its laws . . . consistent with the VRA." Doc. 84 at 10. Alabama's stay motion should be denied.

## LEGAL STANDARD

"A stay is not a matter of right" but "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citations omitted). As the party seeking a stay of a preliminary injunction pending appeal, Alabama bears the burden to demonstrate that a stay is warranted. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). To meet this burden, Alabama must demonstrate: (1) a strong showing that it is likely to succeed on the merits; (2) that it will be irreparably injured absent a stay; (3) that the stay will not substantially injure other parties, including Plaintiffs and Section 208 voters; and (4) that the public interest favors a stay. *Id.* The first two factors are the most critical. *Id.* Alabama must show more than the mere possibility of success on the merits or irreparable injury. *Id.* Because the District Court already granted a preliminary injunction, this Court reviews its grant only for abuse of discretion. *Id.*

## ARGUMENT

### I. ALABAMA IS HIGHLY UNLIKELY TO SUCCEED ON THE MERITS.

#### A. Section 208 Preempts SB1's Submission Restriction and Payment and Gift Provisions.

The District Court correctly determined that SB1 "obvious[ly]" denies the right of Section 208 voters to the assistance of their choice, since it prohibits anyone from assisting with submission and anyone who receives a "payment" or "gift" from assisting with submission or essentially any other aspect of the application process.

Doc. 76 at 5, 11; *see* Doc. 84 at 8-10. Section 208's plain text, the overwhelming weight of authority, and even Alabama's own papers support the District Court's conclusion that it is Plaintiffs who are likely to succeed on the merits. Doc. 84 at 5-6, 8-10; Doc. 76 at 3-5.

This "case turns on a purely legal issue of preemption." *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1266 n.13 (11th Cir. 2000). "Any state law that conflicts with federal law is preempted by the federal law and is without effect under the Supremacy Clause of the Constitution." *Lewis v. Brunswick Corp.*, 107 F.3d 1494, 1500 (11th Cir. 1997). "Congressional intent governs [the] determination of whether federal law preempts state law." *Boyes*, 199 F.3d at 1267.

In enacting Section 208, Congress was specifically concerned about potential undue influence and determined that the way to protect disabled, blind, and low literacy voters is to give *them* the right to decide whom to choose to assist them. S. Rep. No. 97-417, at 62 ("[T]he only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the [Section 208] voter" is to permit them "to have the assistance of a person of their own choice."); Doc. 84 at 8 (discussing same).

A state law conflicts with Section 208 and is preempted if it "stands as an obstacle to the accomplishment and execution" of Congress's "full purposes and objectives." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). Although there

is a presumption against preemption, a state law is preempted if Congress clearly states its intent to regulate in a traditional area of the state. *See Bond v. United States*, 572 U.S. 844, 858 (2014). Section 208 provides such a clear statement: mandating that Section 208 voters receive assistance from anyone of their choice. Doc. 84 at 9.

Accordingly, courts have overwhelmingly confirmed that Section 208 does not give states the authority to overwrite it with limits on voter choice of assistor. *See* Doc. 69 at 49-60 (cataloguing authority); Doc. 76 at 3-5 (same); Doc. 84 at 5-6, 8-10 (same); *see also, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017) (Section 208 preempted state law restricting interpretation assistance); *League of Women Voters of Ohio v. LaRose*, No. 23 Civ. 2414, 2024 WL 3495332, at *15 (N.D. Ohio July 22, 2024) (state limits on absentee assistance violated Section 208); *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1087 (W.D. Ark. 2022) (similar); *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 21 Civ. 361, 2022 WL 2678884, at *7 (E.D.N.C. July 11, 2022) (similar); *Carey v. Wisc. Elections Comm'n.*, 624 F. Supp. 3d 1020 (W.D. Wis. 2022); *Democracy N.C. v. N.C. State Bd. of Elections*, 590 F. Supp. 850, 872 (M.D.N.C. 2022).

Each of Alabama's arguments to the contrary are meritless. *First*, Section 208 offers a "clear statement" that "any voter with a disability or who lacks literacy may have assistance from a person of their choice." Doc. 69 at 49-50. "As in any statutory construction case, we begin with the ordinary meaning of the text and assume that

Congress intended each word to have its ordinary meaning." *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) (cleaned up). Nothing in Section 208's text—including its use of "a" assistor—suggests that a state can remove broad categories of Section 208 assistors. *Cf.* Def.'s Mot. at 7. Rather, the weight of authority agrees that the ordinary meaning of "a person of the voter's choice" in Section 208 is "any person" and certainly does not allow for states to make further exclusions. *See, e.g.*, *LaRose*, 2024 WL 3495332, at *10 ("Section 208 does not say . . . that disabled voters are limited to 'a person of the voter's choice *from a list to be determined by the several states*.'") (emphasis original); *Disability Rts. N.C.*, 602 F. Supp. 3d 872, 878 (E.D.N.C. 2022) (similar). This is because, "[i]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" *Alabama*, 778 F.3d at 932 ("plain meaning of the term 'an election' means 'any election'"). Indeed, this Court has "repeatedly found in prior cases that an indefinite article was purposefully used as a synonym for the word 'any,' determining that the context of a statute required us to read 'a' or 'an' to mean 'any' rather than 'one.'" *Id*. at 933 (collecting cases). If Alabama could limit who "a person" is under Section 208, the statute's "phrase 'of the voter's choice' is either superfluous or loses all meaning." *LaRose*, 2024 WL 3495332, at *11.

Moreover, "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013). "With the exception of the voter's employer or union representative, Congress wrote § 208 to allow voters to choose any assistor they want." *Ark. United*, 626 F. Supp. 3d at 1085. A state cannot, as Alabama attempts here, define the terms of assistance "more restrictively than as federally defined." *OCA-Greater Houston*, 867 F.3d at 615. Rather, a state's "limitation on voter choice" imposed by serves to "impermissibly narrow[] the right guaranteed by Section 208." *Id.*

While the District Court did find Section 208 "ambiguous" as to the scope of the "choice" that Congress intended to protect, Doc. 84 at 8-9; Doc. 76 at 4, it resolved that ambiguity by examining Section 208's legislative history.[2] *See Club Madonna Inc. v. City of Miami Beach,* 42 F.4th 1231, 1253 (11th Cir. 2022) (requiring, in preemption cases, courts to examine, "if necessary, the legislative history"). Looking to the Senate Report—the "authoritative source for

---

[2] Notably, the Justice Department filed a Statement of Interest below in support of Plaintiffs' reading of Section 208. *See* Doc. 51; *Lopez v. Monterey Cnty.*, 525 U.S. 266, 281 (1999) (explaining that the Justice Department's views on the VRA are "traditionally afford substantial deference"). For decades, the Justice Department has read Section 208 to preempt state laws seeking to limit who can assist Section 208 voters. *See, e.g.*, Ltr. from Dep't of Just. C.R. Div. to Atty. Gen. of Fla. 2 (Jan. 15, 1985); Ltr. from Dep't of Just. C.R. Div. to Assistant Atty. Gen. of Va. 1-2 (Aug. 3, 1984); Ltr. from Dep't of Just. C.R. Div. to Bolivar Cnty. Miss. Bd. of Election Comm'ns 2 (Apr. 16, 1984).

legislative intent" regarding the 1982 VRA amendments, *Thornburg v. Gingles*, 478 U.S. 30, 43 n.7 (1986)—the District Court agreed with Plaintiffs that states cannot limit assistors beyond the categories carved out by Congress, *see* Doc. 76 at 4. Because "many [Section 208] voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice," Section 208 preempts state laws that "unduly burden" this right by limiting who can provide assistance. S. Rep. No. 97-417, at 62-63. Thus, the Court "easily" ruled that SB1 "unduly burdens the rights of Section 208 voters to make a choice about who may assist them." Doc. 76 at 4.

Alabama ignores this authority entirely, invoking a few outlier cases that cannot be reconciled with Congress's clear intent. *See* Def.'s Mot. at 13 (citing *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 732 (E.D. Mich. 2022) and *Ray v. Texas*, No. 06 Civ. 385, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008)). *Priorities* and *Ray* are out-of-circuit district court decisions that ignore the plain meaning of "a person" and flout the canon that enumerated exceptions are presumed to be exclusive. *See LaRose*, 2024 WL 3495332, at *14 ("*Priorities USA* discusses 'a person' but does not address 'of the voter's choice'"). And *Ray* was abrogated by the later Fifth Circuit decision in *OCA-Greater Houston*, 867 F.3d at 615.[3]

---

[3] Alabama also cites two old state court cases that disregard Section 208's text. *See* Def.'s Mot. at 13 (citing *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1197 (Ill. App.

Accordingly, the District Court rightly rejected *Nessel* and *Ray* as unpersuasive. Doc. 69 at 51.

*Second*, Alabama misconstrues the District Court's rulings and attempts to transform the "pure legal question" of Section 208 preemption into an inapplicable balancing test. *See* Def.'s Mot. at 13-17. Essentially, Alabama seizes on the Court's use of the phrase "undue burden" from the Senate Report to suggest—invoking unrelated contexts like abortion case law—that Section 208 preemption turns on some balancing inquiry. But as the District Court reiterated, "[t]o be clear," its order was based on "the legal doctrine of conflict preemption" which is a "pure question of law." Doc. 84 at 5.

The District Court then did not impose (let alone disregard) any balancing framework: instead, it held that "any law that limits a § 208 voter's choice or provides additional exceptions to this right unduly burdens the rights of § 208 voters, and is, as a matter of law, in conflict with § 208." Doc. 84 at 6. "Taken in proper context," the Senate Report's references to phrases such as "unduly burden" and

Ct. 2004) and *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1133 (Pa. Commw. Ct. 1995), *aff'd*, 673 A.2d 905 (Pa. 1996)). These cases "are not persuasive" because they "relied on a misinterpretation of Section 208's plain text to create exceptions not found within the statute based on improper policy considerations this Court is prohibited from making." *LaRose*, 2024 WL 3495332, at *14 n.6. Still, in *DiPietrae*, the court affirmed the right of "a disabled voter to appoint a person of his or her choice to obtain an absentee ballot application, to deliver it to the Election Board, to obtain an absentee ballot from the Board and to deliver the completed ballot." 666 A.2d at 1135.

"dependent upon the facts" relate only to the "question of what the challenged state law prohibits." Doc. 76 at 10-11. The District Court "easily" concluded that "SB 1 unduly burdens the rights of Section 208 voters to make a choice about who may assist them in obtaining and returning an absentee ballot." *Id.* at 4. In other words, Congress already decided it is an undue burden to limit Section 208 voter's choice of assistor—there is no subsequent balancing test to perform. *See id.* at 9-10.

Plaintiffs thus were not required to identify a certain number of voters who face particular burdens. *Cf.* Def.'s Mot. at 16. Evidence of any burden on voters is "unnecessary to the court's injunctive-relief determination." Doc. 76 at 9; *see OCA-Greater Houston*, 867 F.3d at 614-15 (affirming summary judgment for plaintiffs on Section 208 preemption claim); *LaRose*, 2024 WL 3495332, at *15 (summary judgment for plaintiffs on same) *Disability Rts. N.C.*, 2022 WL 2678884, at *7 (similar); *Ark. United*, 626 F. Supp. 3d at 1087 (similar).

And the Court soundly rejected Alabama's suggestion that "SB 1 erects no barrier for § 208 voters to receive necessary assistance from people voters actually choose as helpers—namely, spouses, family members, caregivers, neighbors, nurses, and volunteers." Def.'s Mot. at 16. Just the opposite: the "Submission Restriction flatly prohibits third-party ballot-return assistance to disabled, blind, or illiterate voters needing such assistance" and the "Payment and Gift Provisions are in direct conflict with Section 208 because their restrictions would unduly burden

the rights of blind, disabled, or illiterate voters to obtain third-party assistance." Doc. 84 at 9 (citations omitted).

In any event, Plaintiffs *have* identified multiple affected voters. For example, because it is unlawful under the Submission Restriction to submit another's "completed absentee ballot application," Ala. Code § 17-11-4(c)(2), Ms. Faraino's mother could be prosecuted for mailing her application even though Ms. Faraino cannot use her arms, *see* Doc. 74-3 ¶ 6. And Alabama itself acknowledges that "[v]oters residing in assisted living or nursing home facilities *commonly* receive assistance from nurses, staff, and other residents." Def.'s Mot. at 21 (emphasis added). Yet the Submission Restrictions makes it a crime for any of those people to help with mailing. Ala. Code § 17-11-4(c)(2). Alabama's only response is that SB1 allows the voter to get help under Ala. Code § 17-11-4(e). Def.'s Mot. at 21. But the District Court reached the inescapable conclusion that even if "any voter" can receive assistance under § 17-11-4(e), this is illusory because the competing Submission Restriction "flatly prohibits" any assistor from giving it. Doc. 84 at 9.

Similarly, under the Payment and Gift Provisions, Plaintiffs and many others including caregivers, family, friends, or volunteers who knowingly receive even a nominal gift or fee to assist a Section 208 voter—even a token from the voter—risk prosecution. Ala. Code §§ 17-11-4(c)(2), 17-11-4(d)(1)-(d)(2). For example, Dr. Peebles (who has cerebral palsy and quadriplegia) would choose a paid employee of

Plaintiff Alabama Disabilities Advocacy Program as his assistor. Doc. 74-4 ¶ 8. Dr. Peebles also reasonably does not want his "paid care attendants" to assist him when SB1 "put[s] [his] attendants in the position of risking a criminal conviction." *Id.* ¶ 8. Similarly, Messrs. Courie and McKee are chronically disabled voters whose *chosen* assistor is a volunteer from Plaintiff League of Women Voters of Alabama. Doc. 74-1 ¶¶ 4-6; Doc. 74-2 ¶¶ 4-6. Under SB1, however, the volunteer could be prosecuted for receiving "gifted pens and t-shirts" for her volunteer work. Doc. 74-1 ¶¶ 6-7, Doc. 74-2 ¶¶ 6-7. Alabama also atextually suggests that paid "personal caregivers" may provide this assistance, on the theory that they "are not compensated for handling a voter's absentee ballot application." Def.'s Mot. at 24. SB1, however, contains no such caveats.

As the District Court observed, "common sense indicates that when Section 208 voters are deprived of their federal right to choose who they want to assist them" the "very types of problems" identified by Plaintiffs "will ensue." Doc. 76 at 9. Although not required, such evidence reinforces the clear conflict with federal law.

Alabama also wrongly suggests that this case cannot be considered as a facial challenge. *See* Def.'s Mot. at 17 (citing *Gonzalez v. Carhart*, 550 U.S. 124, 156 (2017)). But this is a direct facial conflict; there is no plausible "uncertainty" about the invalidity of this law or how it operates in practice, let alone when the record contains multiple examples of disabled individuals denied their right to assistance

because of SB1. And "[t]o say that these voters have other people who could help them . . . is beside the point" because "Section 208 guarantees blind, disabled, and illiterate voters the 'assistance by a person of the *voter's* choice.'" Doc. 84 at 5 (emphasis original) (quoting Section 208).

Finally, Alabama's assertion that SB1 affects "so few" people is as inaccurate as it is irrelevant. Def.'s Mot. at 16 (citing *Geier v. Am. Honda Motor Co*., 529 U.S. 861, 885 (2000)). Alabama admits that Alabama is home to many voters entitled to protection under Section 208. Def.'s Mot. at 20.[4] And Section 208 guarantees a voter the assistor "of one's choice," yet Alabama admits SB1 restricts such assistance. *See, e.g.*, Doc. 62 at 28:12-25 (counsel for Alabama agreeing at hearing that SB1 would limit such assistance). SB1 unequivocally "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" to guarantee the assistance of potentially thousands of Alabama voters' choice. *Geier*, 529 U.S. at 876, 886.

---

[4] Far from a "few" people, about 6% (over 300,000) of Alabamians are blind, 10% (over 450,000) have limited mobility, and 24% are low literacy. Doc. 82 at 11-12. Some of these may overlap and not require assistance to vote absentee—but even if only a fraction required help, SB1 undoubtedly restricts the rights of thousands of voters.

## B. Nothing About the "Limited Injunction" Here Affects Alabama's Asserted Interest in Addressing Voter Fraud.

Despite Alabama's mischaracterizations, nothing about Section 208—let alone the District Court's "limited injunction"—violates federalism or otherwise precludes states from regulating the conduct of their elections. To the contrary—and as the District Court explained—the preliminary injunction here only suspends SB1 for Section 208 voters and their chosen assistors, and only to the extent required by federal law. Doc. 84 at 10 (explaining that "[t]he injunction still allows Defendant to ferret out and prosecute fraud and all other election crimes involving any voter or assistor" and noting Alabama restricts absentee voting to limited categories of voters); Doc. 76 at 6-7 (similar). Meanwhile, numerous other federal and state laws criminalize voter coercion, intimidation, or fraudulent inducement; by definition, such conduct does not constitute "choice" and is not protected under Section 208 or the injunction. *See, e.g.*, Ala. Code §§ 17-17-33, 38, 39; 52 U.S.C. § 10307; *see also* Doc. 84 at 8 ("Defendant's argument completely ignores that Congress placed the voter's *choice* at the center of its § 208 guaranteed right.") (emphasis original).

And any claim that SB1 "does not conflict with [Section 208] because it serves the same purpose" of stopping fraud fails because Congress clearly "contemplated" that concern in crafting Section 208 and "[s]tates are not permitted to limit the right to assistance further." *Disability Rts. N.C.*, 2022 WL 2678884, at *5. There is no exception to the Supremacy Clause just because a state believes it has strong interests

in overriding federal law. *See, e.g.*, *LaRose*, 2024 WL 3495332, at *18 (rejecting claim that Section 208 injunction might expose a political party to "new illegitimate competitive tactics" because the "clear violation of [the] federally guaranteed voting right" outweighs any alleged harm); *Ark. United*, 626 F. Supp. 3d at 1086 (rejecting state's contention that the challenged law "not preempted" because it serves state's compelling interests" in "election integrity" and "fighting voter fraud," because there is no "exception to the Supremacy Clause when a state has a compelling interest in enacting a statute that conflicts with federal law").

Alabama's suggestion that requiring it to comply with clear federal law will somehow give way to "federal takeover" also has no merit. Def.'s Mot. at 10-11. Numerous other courts (including the Fifth Circuit) have applied Section 208 and found state laws limiting Section 208 voters' choice of assistor to be preempted— without any calamitous result. *See, e.g.*, *OCA-Greater Houston*, 867 F.3d at 614-15; *LaRose*, 2024 WL 3495332, at *15; *Disability Rts. N.C.*, 2022 WL 2678884, at *7; *Ark. United*, 626 F. Supp. 3d at 1087; *Carey*, 624 F. Supp. 3d at 1033; *Democracy N.C.*, 590 F. Supp. 3d at 872. Alabama's quarrel is with the Supremacy Clause, but that is not a basis to avoid its application.

Finally, Alabama's argument is premised on the mistaken contention that Section 208 "contains no 'exceedingly clear language'" and "the presumption against preemption mandates that courts steer clear of expanding § 208's reach

beyond that which it clearly regulates." Def.'s Mot. at 11 (citations omitted). But

Section 208 clearly prohibits what Alabama seeks to do: "[t]he three provisions of

SB1 that [the District Court] enjoined—and again, only enjoined as applied to blind,

disabled, and illiterate voters who are otherwise eligible to vote absentee in the first

place—are irreconcilably in conflict with § 208 *as a matter of law*." Doc. 84 at 5

(emphasis original). Alabama is thus highly unlikely to succeed on appeal.

## II. ALABAMA CANNOT MEET ITS BURDEN ON ANY OF THE REMAINING FACTORS.

Nor can Alabama meet its burden on any of the remaining factors: Alabama

suffers no injury, let alone irreparable injury, from an injunction that merely requires

compliance with federal law. Doc. 84 at 1. It is Plaintiffs and Section 208 voters who

would suffer irreparably if the right to choose their assistor is revoked. *Id.* at 4. And

there is no public interest in enforcing a federally preempted law—particularly given

that "[t]he court's injunction only addresses a small subsection of an even more

limited voter population that is eligible to vote absentee." *Id.* at 10.

### A. Alabama Suffers No Injury from the Injunction.

As the District Court correctly found, Alabama suffers *no* harm, let alone

irreparable harm, from the "limited injunction" at issue. *Id.* at 1. *First*, while

Alabama asserts it is irreparably harmed by "[t]he 'inability to enforce' a 'duly

enacted' state law," Def.'s Mot. at 18, there is no interest in violating federal law.

*See, e.g.*, *Lee*, 915 F.3d at 1331 ("[W]hile federalism certainly respects states' rights,

it also demands the supremacy of federal law when state law offends federally protected rights.").

*Second*, "[i]ssuance of the contemplated injunction would not require the Attorney General to do anything" but refrain from enforcing SB1 inconsistent with Section 208. Doc. 76 at 7. Nor does it impose any new restriction or obligation: it just requires what federal law has long required. *See LaRose*, 2024 WL 3495332, at *19 (Section 208 injunction would "not alter the entirety of [state] election laws," nor "require a sweeping change that will interfere with . . . other voting laws").

*Third*, as discussed, the injunction in no way impedes the State from furthering asserted interests in preventing fraud or coercion. Because Section 208 codifies only the right to assistance of the voter's "choice," it changes nothing about the State's ability to "ferret out and prosecute fraud and all other crimes involving any voter or assistor." Doc. 84 at 10. Moreover, any suggestion that the injunction undermines an interest in preventing voter intimidation is baseless: as the District Court noted, "§ 208 itself supplies the response" to this argument, "and that answer is" that "Congress determined that the best measure to protect § 208 voters against manipulation and improper influence is to allow those voters themselves to choose who will give them assistance." *Id.* at 8. "Alabama will not suffer harm in enforcing its laws in a manner consistent with the VRA." Doc. 84 at 10.

**B. Plaintiffs and 208 Voters Will Be Irreparably Harmed by a Stay.**

By contrast, the District Court correctly found that "it is Plaintiffs (and, even more significantly, § 208 voters statewide) who would be irreparably injured by a stay." Doc. 84 at 4. Without question, revoking the right of Section 208 voters to choose their assistor is irreparable. *Gonzalez v. Kemp*, 470 F. Supp 3d 1343, 1351 (N.D. Ga. 2020), *aff'd sub nom. Gonzalez v. Governor of Ga.*, 978 F.3d 1266 (11th Cir. 2020). The potential fear of prosecution also constitutes irreparable harm. *See Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1269 (11th Cir. 2012). Plaintiffs' missed opportunities to help voters are also irreparable, not only because unassisted voters may not be able to vote at all but also because those opportunities for voter engagement have been permanently lost. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005).

Any suggestion that Section 208 voters are somehow not irreparably harmed is baffling. *See* Def.'s Mot. at 20-21. Alabama has conceded that SB1 forecloses entire categories of assistors; it is "not a close call" that SB1 will cause irreparable injury because it "purports to criminalize the act of giving Section 208 assistance to a voter." Doc. 76 at 5-6. That there may be other theoretical assistors (*e.g.*, Absentee Election Managers) not criminalized by SB1 does not change that SB1 deprives many Section 208 voters of the assistor "*of their choice*." Doc. 76 at 11 (emphasis added). And Alabama's contention that no Section 208 voters face

disenfranchisement ignores evidence from disabled voters that under SB1 they do not know how they will vote. *See, e.g.*, Doc. 74-1 ¶ 11; Doc. 74-2 ¶ 11; Doc. 74-3 ¶ 7; Doc. 74-4 ¶ 9.

**C. The Public Interest Cannot Favor a Stay.**

Finally, "[i]t is clearly in the public's interest to ensure that every blind, disabled, and illiterate voter who is eligible to vote absentee may exercise that right." Doc. 84 at 10; *see United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("Frustration of federal statutes and prerogatives are not in the public interest."). Alabama suggests a stay would preserve the "status quo," Def.'s Mot. at 6—but the status quo is what has been the law for decades before Alabama passed SB1. A stay would cause widespread harm in overt defiance of federal law. Like all other factors, the public interest weighs heavily against a stay.[5]

## CONCLUSION

Plaintiffs respectfully request that Alabama's Motion for Stay be denied.

---

[5] Alabama has not argued that the *Purcell* principle applies here. For the avoidance of doubt, even if it did, all factors articulated by Justice Kavanaugh in his concurrence in *Merrill v. Milligan* weigh against a stay. 142 S. Ct. 879, 881 (2022). As addressed above, (i) all of "the underlying merits are entirely clearcut in favor of" Plaintiffs based on a decades-old statute, (ii) Plaintiffs "would suffer irreparable harm absent an injunction"; (iii) Plaintiffs did not "unduly delay in bringing the complaint to court" (filing two weeks after SB1 was passed), and (iv) the injunction is "at least feasible before the election without significant cost, confusion, or hardship"—since it already is in effect and the injunction does not require Alabama to "do anything." *Id.*; Doc. 76 at 7.

Dated: October 9, 2024

Respectfully Submitted,

/s/ Anuja D. Thatte
Anuja D. Thatte
Deuel Ross
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20009
(202) 249-2170
athatte@naacpldf.org
dross@naacpldf.org

Samuel Spital
Tiffani Burgess
Uruj Sheikh
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
spital@naacpldf.org
tburgess@naacpldf.org
usheikh@naacpldf.org

Valencia Richardson
Danielle M. Lang
Alice C. Huling
Ellen Boettcher
Reginald Thedford
Shilpa Jindia
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
vrichardson@campaignlegalcenter.org

dlang@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
eboettcher@campaignlegalcenter.org
rthedford@campaignlegalcenter.org
sjindia@campaignlegalcenter.org

Laurel Hattix
Alison Mollman
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(703) 342-9729
lhattix@aclualabama.org
amollman@aclualabama.org

Bradley E. Heard
Sabrina Khan
Jess Unger
Ahmed Soussi
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org
ahmed.soussi@splcenter.org

William Van Der Pol, Jr.
Larry G. Canada
ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, AL 35487
(205) 348-4928
wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing Opposition to Motion to Stay contains 5,198 words, consistent with the length limitation in Fed. R. App. P. 27(d)(2). This motion has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, consistent with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6).

Dated: October 9, 2024

*/s/ Anuja D. Thatte*
Anuja D. Thatte

*Counsel for Plaintiffs-Appellees*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 9, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve all counsel of record.

<span style="margin-left:3em">*/s/ Anuja D. Thatte*</span>
<span style="margin-left:3em">Anuja D. Thatte</span>

<span style="margin-left:3em">*Counsel for Plaintiffs-Appellees*</span>