No. 24-13111

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ALABAMA STATE CONFERENCE OF THE NAACP, et al.,
*Plaintiffs-Appellees*,

v.

STEVE MARSHALL, in his official capacity as
Attorney General of Alabama,
*Defendant-Appellant*.

On Appeal from the United States District Court for the
Northern District of Alabama, No. 2:24-CV-420-RDP

# REPLY IN SUPPORT OF DEFENDANT-APPELLANT'S TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL (RELIEF REQUESTED BY OCTOBER 11, 2024)


Steve Marshall
*Attorney General*
Edmund G. LaCour Jr.
*Solicitor General*
Soren Geiger
*Assistant Solicitor General*
Charles McKay
*Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Rule 26.1 and Eleventh Circuit Rule 26.1-1, I certify that, to the best of my knowledge, the individuals and entities names in the Certificate of Interested Persons contained in the previous briefs filed by Defendant-Appellant, Amici Curiae, and Plaintiffs-Appellees reflect a complete list of interested persons.

Respectfully submitted this 10th day of October 2024.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendant-Appellant*

Defendant requests relief tomorrow because absentee voting has already begun. Absentee ballot fraudsters often target vulnerable voters and often do so for pay. The District Court's purportedly "limited" injunction removes SB 1's targeted protections where they are most needed—increasing the risks of stolen votes and plummeting voter confidence. Defendant makes only three brief points in reply. ***First***, everyone agrees that with § 208, Congress intended to preempt state laws that leave disabled voters unable to receive necessary help from a person of their choice. The disagreement centers on whether Congress also intended to preempt state laws that in any way limit that choice. The District Court found the text "ambiguous" on that question, and Plaintiffs recognized that their expansive reading would lead to "uncomfortable" results—like States being forced to allow convicted fraudsters into the voting booth with disabled voters. Under clear Supreme Court precedent, that lack of textual clarity means § 208 may not be stretched to the uncomfortable lengths Plaintiffs would have it go. ***Second***, a blind or disabled voter who requires assistance submitting his or her absentee ballot application is entitled to receive that help. SB1 clearly says so. Yet the District Court read SB1 as being at war with itself by prohibiting the assistance it expressly permits. ***Finally***, Plaintiffs say hundreds of thousands of Alabamians may be affected by SB1, but they have failed to prove that even one § 208 voter will be unable to vote unless paid operatives can handle the voter's absentee ballot application.

**1. The Text.** Section 208 states: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. All can agree that the text communicates a congressional intent to preempt some state laws. For example, § 208 would preempt a state law that categorically bans illiterate voters from receiving help, or one that permits only State-provided assistors into the voting booth, or one that limits the number of permitted assistors such that a disabled voter is effectively left assistor-less. But SB1 is nothing like those laws. It simply criminalizes *buying* and *selling* absentee ballot application assistance.

The question thus is not "whether Congress intended any pre-emption at all," but whether "the *scope* of its intended invalidation of state law" covers laws like SB1. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). "This argument, like all preemption arguments, must be grounded in the text and structure of the statute at issue." *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) (quotations omitted). And when the text of a statute "is susceptible to more than one plausible reading," *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008), courts "have a duty to accept the reading that disfavors pre-emption," *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

The District Court considered § 208's text "ambiguous" as to its scope, finding that it "does not plainly indicate how this federal statute should operate with

state laws governing election procedures (like SB1).” Doc. 69 at 52. Plaintiffs interpreted § 208 as establishing a “fixed universe” of assistors, which leads to admittedly “uncomfortable” results like forcing States to allow convicted fraudsters into the voting booth with vulnerable voters. Doc. 62 at 123:23-24; 124:1-2, 23-24. Defendant proposed the alternative, less uncomfortable and more plausible, reading that a disabled voter’s right to “be given assistance by *a person* of the voter’s choice” is not infringed where the § 208 voter may still receive necessary assistance from “a person” of her choice, even if not from *any* person of her choice. 52 U.S.C. § 10508. Moreover, the State noted that practically anyone may assist, just not for pay, just like anyone may petition their Legislature, but they may not pay bribes. Despite the text’s ambiguity, the District Court rejected Defendant’s “plausible alternative reading” in favor one that preempts state law with intensely uncomfortable results. *Bates*, 544 U.S. at 449. That was legal error.

**2. The Submission Provision.** Defendant has consistently and repeatedly emphasized that “voters who cannot physically submit their application may receive ‘require[d] assistance’ consistent with SB1.” Doc. 72 (Joint Status Report) at 7 (quoting Ala. Code § 17-11-4(e)); *accord* Doc. 42 (Def.’s Motion to Dismiss) at 3, 38, 44 n.19; Doc. 46 (Def.’s PI Resp.) at 3. The default is that only the voter may submit his or her own absentee ballot application, *see* Ala. Code § 17-11-4(c)(2); yet SB1 clearly states that “[a]ny voter who *requires assistance* to vote by reason of

blindness, disability, or inability to read or write may be given assistance." Ala. Code § 17-11-4(e). Thus, reading SB1's provisions "as harmoniously as possible," blind and disabled voters in need of help can get it and will not face criminal prosecution for asking a friend to place their application in the mailbox. *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1268 (11th Cir. 2006).

Rather than read these statutory provisions "so as not to create a conflict," *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 370 (1986), the District Court pitted them against each other. DE84 at 9. Plaintiffs, in turn, argue that while § 17-11-4(e) might permit disabled voters to "receive" required assistance, the Submission Provision prohibits anyone from "giving" that necessary help, thus rendering the right to receive assistance "illusory." ECF 21 at 20. This renders § 17-11-4(e)'s protections "insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 174 (2001). There is no good reason to adopt such a selective reading. And when doing so would result in the preemption of state law, failing to read SB1's provisions as in harmony constitutes yet another legal error.

**3. No Imminent Injury to § 208 Voters.** Plaintiffs submit that as many as 750,000 Alabamians are blind or disabled, and far more "are low literacy." ECF 21 at 22 n.4. Some unknown subset of these undoubtedly require assistance to vote, and SB1 protects their right to receive it. Yet Plaintiffs have not identified a single disabled, blind, or illiterate voter who will be unable to vote unless he or she receives

the assistance of someone who is paid to handle their absentee ballot application. Plaintiffs' highlight the plight of their four declarants, but each has a helper whose assistance falls outside the scope of SB1's prohibitions.

Lauren Faraino "would choose to ask for assistance from [her] mother" but fears her mother would face prosecution for helping." DE 74-3 ¶6. There is no indication that her mother would be paid to submit Ms. Faraino's application, so under SB1, she is free to do so.

Louis Courie and Terry McKee "strongly prefer" voting assistance from their neighbor of "nearly 25 years," a member of the League of Women Voters who has been "gifted pens and t-shirts by the League." DE74-1 ¶¶5-7; DE74-2 ¶¶5-6. But as with Ms. Faraino's mother, there is no evidence that the neighbor has been paid (even in gifts) to handle their absentee ballot applications. The neighbor can help.

Eric Peebles "needs (and prefers) the assistance of compensated volunteers or his paid caregivers." ECF 21 at 10. While his caregivers, like all in the workforce, are "paid," they are not paid, according to Mr. Peebles, to distribute, complete, or collect his application. SB1 does not prohibit them from providing the assistance Mr. Peebles needs. Plaintiffs' "asserted irreparable injury" is "wholly speculative." *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) (en banc).

## CONCLUSION

The Court should stay the District Court's injunction pending appeal.

October 10, 2024                                  Respectfully submitted,

                                                  Steve Marshall
                                                    *Attorney General*

                                                  s/ Edmund G. LaCour Jr.
                                                  Edmund G. LaCour Jr.
                                                    *Solicitor General*
                                                  Soren Geiger
                                                    *Assistant Solicitor General*
                                                  Charles McKay
                                                    *Assistant Attorney General*
                                                  OFFICE OF THE ATTORNEY GENERAL
                                                  STATE OF ALABAMA
                                                  501 Washington Avenue
                                                  P.O. Box 300152
                                                  Montgomery, AL 36130-0152
                                                  (334) 242-7300
                                                  Edmund.LaCour@AlabamaAG.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27 because it contains 1,278 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: October 10, 2024

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.

## CERTIFICATE OF SERVICE

I certify that on October 10, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Amici Curiae*