No. 24-13111

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

ALABAMA STATE CONFERENCE OF THE NAACP, ET AL.,

*Plaintiffs-Appellees,*

-*v*-

ATTORNEY GENERAL OF THE STATE OF ALABAMA, in his official capacity,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of Alabama, No. 2:24-CV-420-RDP

### PLAINTIFFS-APPELLEES' BRIEF

ANUJA D. THATTE
DEUEL ROSS
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
athatte@naacpldf.org

SAMUEL SPITAL
TIFFANI BURGESS
URUJ SHEIKH
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10007
(212) 965-2200

DANIELLE M. LANG
ALICE C.C. HULING
VALENCIA RICHARDSON
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 662-8600

ALISON MOLLMAN
LAUREL A. HATTIX
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106
(703) 342-9729

***(Additional counsel on next page)***

*(Counsel listing continued from first page)*

BRADLEY E. HEARD
SABRINA KHAN
JESS UNGER
AHMED SOUSSI
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700

WILLIAM VAN DER POL, JR.
LARRY G. CANADA
ALABAMA DISABILITIES ADVOCACY
PROGRAM
UNIVERSITY OF ALABAMA
Box 870395
Tuscaloosa, AL 35487
(205) 348-4928

*Counsel for Plaintiffs-Appellees*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE</u> <u>DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Civil Procedure 26.1 and Eleventh Circuit Rule 26.1, I certify that, to the best of my knowledge, the individuals and entities named in the Certificates of Interested Persons contained in the previous briefs filed by Defendant-Appellant and Amici Curiae reflect a complete list of interested persons except the following additional persons who may have an interest in the outcome of this appeal:

1. Davis, James W. – *Counsel for Defendant-Appellant*.

2. Mauldin, Dylan – *Counsel for Defendant-Appellant*.

3. Smith, Brenton M. – *Counsel for Defendant-Appellant*.

I further certify that Plaintiffs-Appellees Alabama State Conference of the NAACP, League of Women Voters of Alabama, League of Women Voters of Alabama Education Fund, Greater Birmingham Ministries, and Alabama Disabilities Advocacy Program have no parent corporations or any other publicly held corporations that own 10% or more of their stock. Alabama State Conference of the NAACP is a state conference of branches of the national NAACP.

Respectfully submitted this 10th day of January, 2025.

/s/ Anuja D. Thatte
Anuja D. Thatte

***Counsel for Plaintiffs-Appellees***

C-1 of 1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs-Appellees do not oppose Defendant-Appellant's request for oral argument.

## __TABLE OF CONTENTS__

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT................................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT.................................................. i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES................................................................................... iv

STATEMENT OF THE ISSUES ...........................................................................1

STATEMENT OF THE CASE................................................................................4

I.   ALABAMA'S LIMITED CATEGORIES OF PERSONS PERMITTED TO
     VOTE ABSENTEE AND MULTI-STEP PROCESS FOR APPLYING TO
     VOTE ABSENTEE. ......................................................................................4

II.  SECTION 208 OF THE VRA............................................................................6

III. SB1'S ENACTMENT AND THE CHALLENGED PROVISIONS.................9

IV.  IMPACT OF SB1 ON PLAINTIFFS AND SECTION 208 VOTERS.............10

V.   RELEVANT PROCEDURAL HISTORY.......................................................12

STANDARD OF REVIEW ..................................................................................13

SUMMARY OF ARGUMENT.............................................................................14

ARGUMENT .......................................................................................................16

I.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS ARE
     SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS...................16

     A. Section 208 Clearly Preempts SB1's Submission Restriction and Payment
        and Gift Provisions.....................................................................................16

        1. Section 208's Plain Text and Legislative History Confirm Congress's
           Manifest Intent That Section 208 Voters Are Entitled to Assistance of
           their Choice Save for the Two Exceptions Enumerated by Congress. ...18

2. The Challenged Provisions of SB1 Are Preempted as a Matter of Law—and Alabama is Incorrect in Seeking to Transform this "Pure Legal Question" Into an Inapplicable Balancing Test......................................26

B. The "Limited Injunction" Here Does Not Undermine Alabama's Asserted Interest in Addressing Voter Fraud..............................................................36

II. THE REMAINING EQUITABLE FACTORS FAVOR AFFIRMING THE PRELIMINARY INJUNCTION. ....................................................................43

A. Plaintiffs Indisputably Suffer Irreparable Harm Absent the Preliminary Injunction.................................................................................................43

B. Alabama Suffers No Harm From the Limited Preliminary Injunction Requiring It To Follow Federal Law, and Such Injunction is Plainly in the Public Interest. .............................................................................................46

CONCLUSION ....................................................................................................47

CERTIFICATE OF COMPLIANCE ....................................................................50

CERTIFICATE OF SERVICE .............................................................................51

# <u>TABLE OF AUTHORITIES</u>*

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
 385 F.3d 1324 (11th Cir. 2004) ..................................................29, 39

*ACLU v. Fla. Bar*,
 999 F.2d 1494 (11th Cir. 1993) ........................................................30

*Alabama v. United States*,
 304 F.2d 583 (5th Cir. 1962), *aff'd*, 371 U.S. 37 (1962)................................6, 40

*Allen v. Milligan*,
 599 U.S. 1 (2023)..................................................................23, 39, 42

*Ark. United v. Thurston*,
 626 F. Supp. 3d 1064 (W.D. Ark. 2022) ................. 18, 20, 31, 33, 36, 37, 38, 42

*Bond v. United States*,
 572 U.S. 844 (2014)........................................................................17

*Boumediene v. Bush*,
 553 U.S. 723 (2008).........................................................................43

*Boyes v. Shell Oil Prod. Co.*,
 199 F.3d 1260 (11th Cir. 2000) ....................................................16, 17

*Carey v. Wisc. Elections Comm'n.*,
 624 F. Supp. 3d 1020 (W.D. Wis. 2022)................................................18, 20, 38

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
 408 F.3d 1349 (11th Cir. 2005) ........................................................45

*City of Boerne v. Flores*,
 521 U.S. 507 (1997).....................................................................40, 41

*Club Madonna Inc. v. City of Miami Beach*,
 42 F.4th 1231 (11th Cir. 2022) ........................................................23

---

* Authorities chiefly relied upon are marked with asterisks.

iv

*Coal. for Educ. in District One v. Bd. of Elections*,
  370 F. Supp. 42 (S.D.N.Y. 1974), *aff'd* 495 F.2d 1090 (2d Cir.
  1974) ................................................................................................... 41

\*\*Democracy N.C. v. N.C. State Bd. of Elections*,
  476 F. Supp. 3d 158 (M.D.N.C. 2020) ....................................... 18, 38

*Dimmitt v. City of Clearwater*,
  985 F.2d 1565 (11th Cir. 1993) ..................................................... 29

*DiPietrae v. City of Philadelphia*,
  666 A.2d 1132 (Pa. Commw. Ct. 1995), *aff'd*, 673 A.2d 905 (Pa.
  1996) ................................................................................................... 22

\*\*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
  No. 21 Civ. 361, 2022 WL 2678884 (E.D.N.C. July 11, 2022) ............................
  ....................................................................... 18, 20, 33, 37, 38

*Felder v. Casey*,
  487 U.S. 131 (1988) ........................................................................ 37

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
  691 F.3d 1250 (11th Cir. 2012) .............................................. 28, 45, 47

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992) ........................................................................... 37

*Garza v. Smith*,
  320 F. Supp. 131 (W.D. Tex. 1970), *injunction granted* No. 70-
  CA-169 (W.D. Tex. Dec. 6, 1971) ................................................ 38

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) ........................................................................ 35

*Gilmore v. Greene Cnty. Democratic Party Exec. Comm.*,
  435 F.2d 487 (5th Cir. 1970) .................................................. 24, 41

*Gonzalez v. Kemp*,
  470 F. Supp. 3d 1343 (N.D. Ga. 2020), *aff'd sub nom. Gonzalez v.
  Governor of Ga.*, 978 F.3d 1266 (11th Cir. 2020) ........................ 44

*Harris v. Siegelman*,
  695 F. Supp. 517 (M.D. Ala. 1988) ......................................... 7, 24, 41

v

*Henry v. Att'y Gen.*,
　　45 F.4th 1272 (11th Cir. 2022) ............................................................29

*Hillman v. Maretta*,
　　569 U.S. 483 (2013) ...............................................................................20

*La Union Del Pueblo Entero v. Abbott*,
　　No. 21 Civ. 844, 2024 WL 4488082 (W.D. Tex. Oct. 11, 2024) ...........17, 31, 36

*Lamps Plus, Inc. v. Varela*,
　　587 U.S. 176 (2019) ...............................................................................17

*League of Women Voters of Ohio v. LaRose*,
　　No. 23 Civ. 2414, 2024 WL 3495332 (N.D. Ohio July 22, 2024) .......................
　　..................................................................... 18, 19, 21, 22, 32, 37, 38, 47

*Lebron v. Sec'y, Fla. Dep't of Child. & Fams.*,
　　710 F.3d 1202 (11th Cir. 2013) .............................................................13

*Lodge v. Buxton*,
　　639 F.2d 1358 (5th Cir. 1981), *aff'd sub nom. Rogers v. Lodge*,
　　458 U.S. 613 (1982) ...............................................................................41

*Lopez v. Monterey Cnty.*,
　　525 U.S. 266 (1999) ...............................................................................20

*Louisiana v. United States*,
　　386 U.S. 270 (1967), (E.D. La. 1966) ..................................................38

*Medtronic, Inc. v. Lohr*,
　　518 U.S. 470 (1996) ...............................................................................17

*Morris v. Fortson*,
　　261 F. Supp. 538 (N.D. Ga. 1966) ....................................................... 26

*N. Carolina State Conf. of NAACP v. McCrory*,
　　831 F. 3d 204 (4th Cir. 2016) ...............................................................41

*Nick v. Bethel*,
　　No. 07 Civ. 98, 2008 WL 11456134 (D. Alaska Jul. 30, 2008) ...........41

*Nw. Austin Mun. Util. Dist. No. 1 v. Holder*,
　　557 U.S. 193 (2009) ............................................................................7, 40

*Obama for Am. v. Husted*,
  697 F.3d 423 (6th Cir. 2012) ................................................................44

*\*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ........................... 14, 17, 20, 21, 29, 31, 32, 38, 41

*Oregon v. Mitchell*,
  400 U.S. 112 (1970)..........................................................................22, 41

*P. R. Org. for Pol. Action v. Kusper*,
  490 F.2d 575 (7th Cir. 1973) ...............................................................41

*Priorities USA v. Nessel*,
  628 F. Supp. 3d 716 (E.D. Mich. 2022) .............................................21

*Qualkinbush v. Skubisz*,
  826 N.E.2d 1181 (Ill. App. Ct. 2004) .................................................22

*Ray v. Texas*,
  No. 06 Civ. 385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ........21

*Revette v. Int'l Ass'n of Bridge Workers*,
  740 F.2d 892 (11th Cir. 1984) (per curiam) .......................................13

*Shelby Cnty. v. Holder*,
  570 U.S. 529 (2013)..............................................................................40

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966)..............................................................................40

*Stenberg v. Carhart*,
  530 U.S. 914 (2000)..............................................................................30

*Tennessee v. Lane*,
  541 U.S. 509 (2004)..............................................................................42

*Thornburg v. Gingles*,
  478 U.S. 30 (1986)................................................................................23

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012) ...........................................................47

*United States v. Alabama*,
778 F.3d 926 (11th Cir. 2015) ........................................................................18, 19

*United States v. Berks Cnty.*,
277 F. Supp. 2d 570 (E.D. Pa. 2003) ...............................................................41

*United States v. Charleston Cnty.*,
316 F. Supp. 2d 268 (D.S.C. 2003), *aff'd* 365 F.3d 341 (4th Cir.
2004) ...............................................................................................................41

*United States v. Long Cnty.*,
No. 06 Civ. 40, 2006 WL 8458526 (S.D. Ga. Feb. 10, 2006) ..........................41

*United States v. Louisiana*,
265 F. Supp. 703 (1966) ................................................................................38

*United States v. Lynd*,
349 F.2d 790 (5th Cir. 1965) ..........................................................................40

*United States v. Mississippi*,
380 U.S. 128 (1965) ........................................................................................40

**Statutes**

52 U.S.C. § 10307 ..............................................................................................36

52 U.S.C. § 10310(c)(1) .................................................................................2, 22

52 U.S.C. § 10501 ..............................................................................................40

*52 U.S.C. § 10508 ...............................................................................1, 2, 6, 15

Ala. Code § 17-11-3(a) .........................................................................................5

Ala. Code § 17-11-4(c)(1) .................................................................................5, 9

Ala. Code § 17-11-4(c)(2) ...................................................................1, 2, 9, 33

Ala. Code § 17-11-4(d)(1) ...............................................................2, 9, 10, 27

Ala. Code § 17-11-4(d)(2) ...............................................................2, 9, 10, 27

Ala. Code § 17-11-4(e) ...............................................................................28, 33

Ala. Code § 17-11-4(f) ..........................................................................28

Ala. Code § 17-17-33 ...........................................................................36

Ala. Code § 17-17-38 ...........................................................................36

Ala. Code § 17-17-39 ...........................................................................36

Ala. Code § 17-17-57 .............................................................................9

**Rule**

Fed. R. Civ. P. 65 ................................................................................13

**Other Authorities**

Ala. Sec'y of State, "Absentee Voting Information" ................................5

H. Rep. 97-227 (1982) ....................................................................25, 41

Ltr. from Dep't of Just. C.R. Div. to Assistant Att'y Gen. of Ala.
(Apr. 4, 1972) ......................................................................................7

Ltr. from Dep't of Just. C.R. Div. to Assistant Att'y Gen. of Va. (Aug.
3, 1984) ..............................................................................................21

Ltr. from Dep't of Just. C.R. Div. to Att'y Gen. of Ala. (Mar. 13,
1970) ....................................................................................................7

Ltr. from Dep't of Just. C.R. Div. to Att'y Gen. of Fla. (Jan. 15, 1985) ................20

Ltr. from Dep't of Just. C.R. Div. to Bolivar Cnty. Miss. Bd. of
Election Comm'ns (Apr. 16, 1984) ..................................................21

*S. Rep. 97-417 (1982) .................................. 3, 6, 7, 23, 24, 38, 40, 41, 42

## STATEMENT OF THE ISSUES

1.     Whether SB1's Payment and Gift Provisions and Submission Restriction conflict with the plain statutory text and legislative purpose of Section 208 of the Voting Rights Act by restricting Section 208 voters' ability to choose their preferred assistor beyond what Congress intended, and are thereby preempted by Section 208.

2.     Whether the District Court correctly found that SB1 is preempted by Section 208 and that this infringement on Section 208 voters' federally protected rights constitutes irreparable harm for Plaintiffs.

## INTRODUCTION

The legal issue before this Court is simple and discrete: Does the text of Section 208 of the Voting Rights Act ("VRA") preempt the at-issue provisions of Alabama Senate Bill 1 ("SB1")? The answer is plainly yes. The District Court below issued a "limited injunction" and explained that "nothing in this injunction would limit Alabama from investigating and addressing fraud in the procurement of absentee ballots," App. Doc. 76 at 7; *see* App. Doc. 84 at 10—so long as Alabama does not infringe upon the decades-old federal right of disabled, blind, and low literacy voters to "assistance by a person of the voter's choice." 52 U.S.C. § 10508.

Yet SB1 is a sweeping law that criminalizes *anyone* returning another person's absentee ballot application (the "Submission Restriction"), Ala. Code § 17-11-4(c)(2), as well as *anyone* accepting or providing a payment or gift for assisting with

1

nearly any step in applying to vote absentee (the "Payment or Gift Provisions"), Ala. Code § 17-11-4(d)(1)-(d)(2) (collectively, the "Challenged Provisions"). The Submission Restriction by its plain text makes it a crime for any person—*e.g.*, "spouses, family members, caregivers, neighbors, nurses, and volunteers" whom "voters actually choose as helpers," Defendant-Appellant's Opening Brief, ECF 37 ("Def.'s Br.") at 42—to even drop another's absentee ballot application in the mail. Ala. Code § 17-11-4(c)(2). Nowhere does SB1 protect Section 208 voters' chosen assistors from the risk of prosecution. As the District Court asked, "How, then, are blind voters or disabled voters with mobility restrictions to return their absentee ballot applications? Under SB1's Submission Restriction, *no one* can assist them in this way." App. Doc. 69 at 54. Similarly, under the Payment and Gift Provisions, even paid caregivers or family and friends who receive token gifts for their assistance with an absentee ballot application—like a pen, gas money, or food from a disabled or illiterate voter themself—can face felony prosecution and up to twenty years' imprisonment. Ala. Code §§ 17-11-4(d)(1)-(d)(2).

Thus, as the District Court "easily conclude[d]," SB1 violates Section 208. App. Doc. 76 at 4-5. SB1 impermissibly denies disabled, blind, and low literacy voters (collectively, "208 voters") "assistance by a person of the voter's choice." 52 U.S.C. § 10508. This assistance with completing the absentee ballot application is "necessary to make [their] vote effective," 52 U.S.C. § 10310(c)(1); *accord* App.

Doc. 76 at 4-5. Protecting these voters' ability to choose their assistor is fundamental to their right to vote and their dignity in doing so. It is also consistent with Section 208's core purpose to give 208 voters "the same opportunity to vote enjoyed by all citizens." S. Rep. No. 97-417, at 62 (1982) (the "Senate Report").

For example, declarant Lauren Faraino cannot use her arms and, therefore, physically cannot submit her absentee ballot application without help from someone to place it in an envelope and the mailbox. App. Doc. 74-3 ¶¶ 2, 5. Dr. Eric Peebles has cerebral palsy and quadriplegia, meaning he needs (and prefers) the assistance of compensated volunteers or his paid caregivers to complete the absentee application process. App. Doc. 74-4 ¶ 6. Disabled, homebound individuals Louis Courie and Terry McKee attested that, without the assistance of the compensated volunteer who they know and trust, "[they] will not be able to vote." App. Doc. 74-1 ¶ 11; App. Doc. 74-2 ¶ 11. As the District Court correctly found in granting the limited relief at issue, these are "exactly the type of circumstances that are obvious to anyone who considers the practical and legal effects of eliminating or limiting a Section 208 voter's choice" and "illustrate the very harm that Section 208 envisions – that voters with disabilities are unable to vote because they are denied the assistance they need." App. Doc. 76 at 11-12.

Beyond the merits, the District Court also correctly found that all equitable factors weigh in favor of a preliminary injunction. On appeal, Alabama only contests

irreparable harm—but "the irreparable harm of not being able to obtain legally protected assistance is significant." App. Doc. 76 at 12; *see* App. Doc. 84 at 10 ("While the harm to [Section 208] voters will be great if these provisions are not enjoined, Alabama will not suffer harm in enforcing its laws . . . consistent with the VRA."). The District Court acted well within its discretion in granting the limited preliminary injunction at issue and Alabama's appeal thereof should be denied.

## STATEMENT OF THE CASE

### I.  ALABAMA'S LIMITED CATEGORIES OF PERSONS PERMITTED TO VOTE ABSENTEE AND MULTI-STEP PROCESS FOR APPLYING TO VOTE ABSENTEE.

Under Alabama law, with limited emergency exceptions, absentee voting is permitted only if a voter: (i) will be absent from the county of residence on Election Day; (ii) is ill or has a physical disability that prevents a trip to the polling place; (iii) is enrolled as a student at an educational institution located outside the county of his or her personal residence, attendance at which prevents his or her attendance at the polls; (iv) is an appointed election officer or poll watcher at a polling place other than their regular polling place; (v) is working a required shift of ten hours or more that coincides with polling hours; (vi) is a caregiver for a family member (to the second degree of kinship) and the family member is confined to their home; (vii) is currently incarcerated in prison or jail, but has not been convicted of a felony involving moral turpitude; (viii) is a member of, or spouse or dependent of a member

of, the Armed Forces of the United States or is similarly qualified to vote absentee pursuant to the federal Uniformed and Overseas Citizens Absentee Voting Act. Ala. Code § 17-11-3(a).

For the subset of Alabama voters who do qualify to vote absentee, there is a multi-step process for applying to do so. A voter must use the absentee ballot application form specified by the Alabama Secretary of State, which can be accessed only in the following ways: (i) online, downloaded, and printed, (ii) in hard copy from the relevant county Absentee Election Manager; or (iii) in hard copy by mail, if a mailed written request is first sent to the Absentee Election Manager.[1] After obtaining the absentee application form, it must be completed and returned in hard copy.[2]

In broad strokes, Alabama's absentee application form requires filling out various fields, and the completed application packet also must include a printed copy of the voter's valid photo identification.[3] Then, the physical application packet must be submitted to the voter's Absentee Election Manager either in person or by mail/commercial carrier. Ala. Code § 17-11-4(c)(1). Because of these multiple steps, certain voters—including the disabled and blind voters who submitted declarations

---

[1]    Ala. Sec'y of State, "Absentee Voting Information," https://www.sos.alabama.gov/alabama-votes/voter/absentee-voting (accessed Jan. 9, 2025).

[2] *See id.*

[3] *See id.*

5

in this case—depend on assistance from people that they know and trust in order to apply to vote absentee. *See* App. Doc. 74-1; App. Doc. 74-2; App. Doc. 74-3; App. Doc. 74-4.

## II.    SECTION 208 OF THE VRA.

Enacted in 1982, Section 208 of the VRA provides:

Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

52 U.S.C. § 10508. Section 208 was enacted to address the "significant effect" that limiting assistance has on those "groups of citizens [who] are unable to exercise their rights to vote without obtaining assistance in voting" and to "avoid denial or infringement of their right to vote." S. Rep. No. 97-417, at 62. By its plain text, the employer and union exceptions are the exclusive exceptions to an assistor of the 208 voter's choice carved out by Congress. *See id.*; *see also id.* at 2 ("[S]ubsection 208 is added, prescribing the method by which the voters who are blind, disabled or illiterate are entitled to have assistance in a polling booth from a person of their own choosing, with two exceptions.").

Prior to the VRA's ban on literacy tests in 1965, Alabama law had required people to complete voter registration forms without assistance. *See, e.g.*, *Alabama v. United States*, 304 F.2d 583, 587 (5th Cir. 1962), *aff'd*, 371 U.S. 37 (1962). Even after 1965, Alabama enacted laws that, like SB1, required applicants to complete

mail-in voter registration forms without assistance[4] or enforced laws that severely restricted assistance for in-person voters.[5] *See Harris v. Siegelman*, 695 F. Supp. 517, 526-28 (M.D. Ala. 1988). These "subtle" literacy tests were "engineered to deny [Black people] the right to vote" based on the reality that, because of discrimination, Black adults were more likely than their White counterparts to have trouble with reading and writing. *See Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, 557 U.S. 193, 219-20 (2009) ("*MUD*").

Thus, in key part, Congress added Section 208 to the VRA in 1982 to give force to the literacy test ban's "implicit requirement" that people who cannot read or understand voting forms "may not be denied assistance." S. Rep. No. 97-417, at 63. In doing so, Congress codified precedent that any "provision barring assistance to illiterates conflicts with the Voting Rights Act." *Id.* at 62-63 & nn.208-210 (cleaned up) (citing *Louisiana v. United States*, 386 U.S. 270 (1967) (mem.), *aff'g* 265 F. Supp. 703 (E.D. La. 1966); *Garza v. Smith*, 320 F. Supp. 131 (W.D. Tex. 1970) (three-judge court), *injunction granted* No. 70-CA-169 (W.D. Tex. Dec. 6, 1971); *United States v. Mississippi*, 256 F. Supp. 344 (S.D. Miss. 1966) (three-judge court)). And Congress favorably cited an article which catalogued additional precedent that

---

[4] Ltr. from Dep't of Just. C.R. Div. to Att'y Gen. of Ala. (Mar. 13, 1970), https://www.justice.gov/crt/case-document/file/1277176/dl?inline.

[5] Ltr. from Dep't of Just. C.R. Div. to Assistant Att'y Gen. of Ala. (Apr. 4, 1972), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/AL-1150.pdf.

interpreted the VRA to require unrestricted aid to illiterate voters. *See id.* at 63 n.209 (citing Armand Derfner, *Discrimination and Voting*, 26 Vand. L. Rev. 523, 563-566 (1973), which cites *Gilmore v. Greene Cnty. Democratic Party Exec. Comm.*, 435 F.2d 487 (5th Cir. 1970); *Morris v. Fortson*, 261 F. Supp. 538 (N.D. Ga. 1966) (three judge court)). Congress also expressly found that citizens who are blind or disabled are "unable to exercise their rights to vote without obtaining assistance," and therefore codified their broad right to assistance of their choice under Section 208 as well. *Id.* at 62.

In enacting Section 208, Congress also was concerned about safeguarding voters against potential undue influence. Congress determined that "the *only way* to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the [Section 208] voter" is to permit them "to have the assistance of a person of their own choice." *Id.* (emphasis added). In so doing, Congress "recognize[d] the legitimate right of any state to establish necessary election procedures, subject to the overriding principle that such procedures shall be designed to protect the rights of voters." *Id*. at 63. Nonetheless, in the judgment of Congress, Section 208 voters are "at the least . . . entitled to assistance from a person of their own choice." *Id*. And Section 208 "prescribe[s] minimal requirements as to the manner in which [Section 208] voters may choose to receive assistance." *Id.*

8

### III.    SB1'S ENACTMENT AND THE CHALLENGED PROVISIONS.

SB1 was enacted in March 2024. In relevant part, SB1 amends Alabama Code Section 17-11-4, which governs absentee applications, to add substantial criminal penalties for various forms of absentee application assistance. The Challenged Provisions at issue are:[6]

- Submission Restriction: SB1 makes it "unlawful for an individual to submit a completed absentee ballot application to the absentee election manager other than his or her own application," unless that person is seeking emergency medical treatment within five days before an election. Ala. Code § 17-11-4(c)(2). The application "may be submitted" by personally dropping off one's own application with the Absentee Election Manager or returning one's own application in the mail/commercial carrier. *Id.* § 17-11-4(c)(1). This provision carries a Class A misdemeanor penalty. *Id.* § 17-17-57.

- Payment Provisions: SB1 makes it "unlawful for a third party to knowingly receive a payment," or "knowingly pay . . . a third party," to "distribute, order, request, collect, . . . complete, obtain, or deliver a voter's absentee ballot application." Ala. Code § 17-11-4(d)(1)-(d)(2). These provisions carry a Class B or C felony penalty (Class C for assistors who "receive a payment" and

---

[6] Alabama's brief also references SB1's Prefilling Provision, Def.'s Br. at 20 (citing Ala. Code § 17-11-4(b)(2)), but that provision was not preliminarily enjoined and is not at issue before this Court.

Class B for those who "pay" such assistor). *Id.*

- Gift Provisions: SB1 makes it "unlawful for a third party to knowingly receive a . . . gift," or "knowingly . . . provide a gift," to a "third party" to distribute, order, request, collect, . . . complete, obtain, or deliver a voter's absentee ballot application." Ala. Code § 17-11-4(d)(1)-(d)(2). These provisions carry a Class B or C felony penalty (Class C for assistors who "receive . . . a gift" and Class B for those who "provide a gift" to such assistor). *Id.*

## IV.   IMPACT OF SB1 ON PLAINTIFFS AND SECTION 208 VOTERS.

In Alabama, more than 30% of all adults (or about 1.5 million people) have some form of disability.[7] This includes over 300,000 of Alabamians who are blind and about 450,000 people with limited mobility.[8] Alabama also has the 44th lowest literacy rate in the country.[9] Nearly a quarter (24%) of Alabamians aged 16 and older read and write at below basic literacy levels.[10] In 2022, among students in the eighth grade, 56% of Black Alabamians and 46% of Latino Alabamians, had below basic

---

[7] *See* Plaintiffs-Appellees' forthcoming Supplemental Appendix ("SA") Doc. 82-4, Ctrs. for Disease Control and Prevention Disability and Health Data Sys. (DHDS), *Alabama: Disability Estimates*.

[8] *See* SA Doc. 82-5, Ctrs. for Disease Control and Prevention Nat'l Ctr. on Birth Defects and Dev. Disabilities, *Disability Impacts: Alabama*.

[9] SA Doc. 82-6, Inst. of Educ. Sci., Nat'l Ctr. for Educ. Stat., *2022 Reading State Snapshot Report: Alabama* (2022).

[10] SA Doc. 82-7, Inst. of Educ. Sci., Nat'l Ctr. for Educ. Stat.: *State Summary Card: Alabama, Skills Map*.

literacy levels.[11] Further, among the state's citizen voting-age population, 27% of the state's Spanish-speakers speak English "less than very well."[12]

Plaintiffs are Alabama civil rights, faith-based, and disability rights organizations with paid employees and/or volunteers who receive reimbursement (such as gas money) or tokens (such as t-shirts or pens) as a regular part of their work. *See, e.g.*, SA Doc. 34-3 ¶¶ 5, 8, 13; SA Doc. 34-4 ¶¶ 5, 8, 10-11; SA Doc. 34-5 ¶¶ 2, 5-6; App. Doc. 74-5 ¶¶ 1-3. Plaintiffs routinely field requests from Section 208 voters for assistance with the voting process, including with navigating the steps required to apply for an absentee ballot. *See, e.g.*, SA Doc. 34-3 ¶ 11 ; SA Doc. 34-4 ¶¶ 7, 20; SA Doc. 82-1 ¶¶ 4-5; App. Doc. 74-5 ¶ 9. As a result of SB1, however, Plaintiffs were fearful of being criminally prosecuted for providing absentee application assistance to Section 208 voters and stopped providing it prior to the preliminary injunction. *See, e.g.*, SA Doc. 34-3 ¶ 24; SA Doc. 34-4 ¶¶ 13-15; SA Doc. 34-5 ¶¶ 14, 30-31. Accordingly, because of SB1, Section 208 voters were deprived of their right to the assistor of their choice. *See* App. Doc. 74-4 ¶¶ 7-8; App. Doc. 74-1 ¶¶ 6-7; App. Doc. 74-2 ¶¶ 6-7.

---

[11] SA Doc. 82-6.

[12] SA Doc. 82-8, U.S. Census Bureau, *Why We Ask Questions About Language Spoken at Home*; SA Doc. 82-9, U.S. Census Bureau, *Language Spoken at Home: Am. Comm. Survey, ACS 1-Year Estimates Subject Tables, Table S1601, 2022*.

## V.    RELEVANT PROCEDURAL HISTORY.

On August 21, 2024, the District Court granted in part and denied in part Alabama's Motion to Dismiss, ruling that Section 208 of the Voting Rights Act preempts the Challenged Provisions of SB1 as a matter of law. *See* App. Doc. 69. Subsequently, on September 24, 2024, the District Court issued the preliminary injunction "Order Enjoining in Limited Part Enforcement of Alabama Senate Bill 1 (2024)" that is the subject of the instant appeal, including by referencing the reasoning on this "pure legal question" from its Motion to Dismiss ruling. App. Doc. 76 at 10. On October 4, 2024, the District Court denied Alabama's Motion to Stay Preliminary Injunction Pending Appeal, including by reference to its Preliminary Injunction ruling. *See* App. Doc. 84.[13]

On October 11, 2024, this Court denied Defendant's motion to stay the District Court's limited preliminary injunction, stating:

> We conclude that the appellant has not made a strong showing that he is likely to succeed on the merits, the appellant (and thereby the state) will not be irreparably harmed if a stay is denied, the issuance of a stay would injure the plaintiffs (and other Section 208 voters), and the public interest does not weigh in favor of a stay.

ECF 23 at 2.

---

[13] Because the District Court's rulings include overlapping analysis regarding the issues on appeal, this brief discusses all three as necessary.

## <u>STANDARD OF REVIEW</u>

A preliminary injunction is warranted under Federal Rule of Civil Procedure 65 where Plaintiffs have established (1) a substantial likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) the harm they will experience outweighs any injury the opposing party may experience under the injunction; and (4) the injunction would not be adverse to the public interest. *See Lebron v. Sec'y, Fla. Dep't of Child. & Fams.*, 710 F.3d 1202, 1206 (11th Cir. 2013).

On appeal, "the district court's grant of a preliminary injunction" is reviewed "for an abuse of discretion," with "underlying questions of law [] reviewed *de novo,* and the district court's factual determinations cannot be disturbed unless clearly erroneous." *Id*. This Court's "limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success . . . with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Revette v. Int'l Ass'n of Bridge Workers,* 740 F.2d 892, 893 (11th Cir. 1984) (per curiam) (further citations omitted).

## SUMMARY OF ARGUMENT

The District Court correctly determined that Plaintiffs-Appellees are entitled to a preliminary injunction.

**I.A.** Applying the Supreme Court's preemption framework, the District Court correctly held that Section 208 of the VRA does not—as a matter of law—allow states to further restrict disabled, blind, and low literacy voters' choice of assistor in the voting process beyond the two exceptions (employer and union representative) enumerated by Congress in the federal statute. This conclusion is compelled by the plain text of the statute. It is also consistent with the overwhelming weight of case law. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017). And it is consistent with the legislative history of Section 208, which the District Court properly considered as part of the preemption inquiry. Accordingly, SB1's Submission Restriction and Payment and Gift Provisions—which by their plain terms limit Section 208 voters' choice of assistance—impermissibly infringe upon the right to assistance guaranteed by Section 208. As the District Court also correctly held, the fact that SB1, elsewhere in the statute, essentially recites the text of Section 208 does not obviate the conflict with federal law for the Submission Restriction, since nowhere does SB1 (or any other Alabama law) provide that chosen assistors cannot be prosecuted for violating the plain terms of the Submission Restriction which prevents anyone at all from submitting another's absentee ballot application.

14

**I.B.** The District Court also correctly held that the "limited" preliminary injunction at issue does not in any way undermine Alabama's asserted interest in preventing voter fraud. Section 208 protects only assistance "of the voter's choice," 52 U.S.C. § 10508—and fraud, coercion, or similar misconduct are definitionally not "of the voter's choice." Thus, Section 208 (and the preliminary injunction) do not apply to such conduct. Further, Section 208 itself was enacted out of concern over potential undue influence over disabled, blind, and low literacy voters—and its statutory protections for "the voter's choice" reflect Congress's determination of how to address this concern. Any asserted interest Alabama may have in enacting SB1 does not provide it license to override federal law. There are also numerous other federal and state laws outlawing fraud and similar conduct that are unaffected by the preliminary injunction here.

**II.** As to the remaining preliminary injunction factors, Alabama only contests irreparable harm. The District Court correctly held that because SB1 infringes on the right of Section 208 voters to the assistance of their choice, Plaintiffs suffer irreparable harm from the deprivation of this federally protected guarantee. Although no longer in dispute, for completeness, the District Court also correctly held that Alabama suffers no harm from simply being required to comply with federal law as the "limited" preliminary injunction here requires and, absent a preliminary injunction, it is Plaintiffs-Appellees and Section 208 voters more broadly who will

suffer from the deprivation of their federal voting right. Further, it is axiomatic that there is no public interest in the enforcement of a state law in a manner that would violate federal civil rights law.

## **ARGUMENT**

## I. **THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS.**

The District Court correctly and "easily" determined that SB1 denies the right of Section 208 voters to the assistance of their choice, since the Submission Restriction prohibits anyone from assisting with submission and the Payment and Gift Provisions prohibit anyone who receives a "payment" or "gift" from assisting with submission or essentially any other aspect of the application process. App. Doc. 76 at 3-5, 11-12; *see* App. Doc. 84 at 8-10. Section 208's plain text, its legislative history, the overwhelming weight of authority, and even Alabama's own papers support the District Court's conclusion that Plaintiffs are substantially likely to succeed on the merits—and all of Alabama's arguments to the contrary must be rejected.

### A. Section 208 Clearly Preempts SB1's Submission Restriction and Payment and Gift Provisions.

This "case turns on a purely legal issue of preemption." *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1266 n.13 (11th Cir. 2000). "Any state law that conflicts with federal law is preempted by the federal law and is without effect under the

16

Supremacy Clause of the Constitution." *Id.* at 1267. "Congressional intent governs [the] determination of whether federal law preempts state law." *Id.*; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("The purpose of Congress is the ultimate touchstone in every preemption case.") (quotation marks and citations omitted).

A state law conflicts with Section 208 and is preempted if it "stands as an obstacle to the accomplishment and execution" of Congress's "full purposes and objectives." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019). Although there is generally a presumption against preemption, a state law is preempted if Congress clearly states its intent to regulate in an area of traditional state responsibility. *See Bond v. United States*, 572 U.S. 844, 858 (2014). As the District Court correctly held, Section 208 provides such a clear and unequivocal statement: mandating that Section 208 voters receive assistance from anyone of their choice other than the union and employer exceptions carved out by Congress. *See* App. Doc. 69 at 49-50, 52; App. Doc. 76 at 4; App. Doc. 84 at 9.

Accordingly, it is unsurprising that courts have overwhelmingly confirmed that Section 208 does not give states the authority to overwrite it with further limits on voters' choice of assistor. *See, e.g., OCA-Greater Houston,* 867 F.3d at 614-15 (Section 208 preempted state law imposing residency requirements on who can provide interpretation assistance); *La Union Del Pueblo Entero v. Abbott*, No. 21 Civ. 844, 2024 WL 4488082, at *54 (W.D. Tex. Oct. 11, 2024) (state limits on

assistance, including ban on compensated individuals from providing absentee assistance, violated Section 208); *League of Women Voters of Ohio v. LaRose*, No. 23 Civ. 2414, 2024 WL 3495332, at *15 (N.D. Ohio July 22, 2024) (state limits on absentee voter assistance violated Section 208); *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1087 (W.D. Ark. 2022) (state limit on the number of voters whom a single assistor may aid violated Section 208); *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 21 Civ. 361, 2022 WL 2678884, at *7 (E.D.N.C. July 11, 2022) (state limits on absentee voter assistance violated Section 208); *Carey v. Wisc. Elections Comm'n.*, 624 F. Supp. 3d 1020, 1033 (W.D. Wis. 2022) (state limits on absentee voter assistance violated Section 208); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 235 (M.D.N.C. 2020) (state limits on absentee voter assistance violated Section 208); *see also* App. Doc. 69 at 49-60 (cataloguing authority); App. Doc. 76 at 3-5 (same); App. Doc. 84 at 5-6, 8-10 (same).

Each of Alabama's arguments against preemption is meritless.

**1. Section 208's Plain Text and Legislative History Confirm Congress's Manifest Intent That Section 208 Voters Are Entitled to Assistance of their Choice Save for the Two Exceptions Enumerated by Congress.**

"As in any statutory construction case, we begin with the ordinary meaning of the text and assume that Congress intended each word to have its ordinary meaning." *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) (cleaned up). By its plain text, Section 208 does not permit states to further circumscribe

Section 208 voters' choice of assistor. There is no other "plausible reading" of the statute. Def.'s Br. at 24. Just the opposite: Section 208 offers a "clear statement" that "any voter with a disability or who lacks literacy may have assistance from a person of their choice." App. Doc. 69 at 49-50. Nothing in Section 208's text—including its use of "a" assistor—suggests that a state can remove 208 voters' access to broad categories of assistors. Rather, "[i]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" *Alabama*, 778 F.3d at 932 ("plain meaning of the term 'an election' is 'any election'"). For that reason, this Court has "repeatedly found in prior cases that an indefinite article was purposefully used as a synonym for the word 'any,' determining that the context of a statute required us to read 'a' or 'an' to mean 'any' rather than 'one.'" *Id*. at 933 (collecting cases). If Alabama could limit who "a person" is under Section 208, the statute's "phrase 'of the voter's choice' is either superfluous or loses all meaning." *LaRose*, 2024 WL 3495332, at *11.

Consistent with this Court's precedent, the weight of authority agrees that the ordinary meaning of "a person of the voter's choice" in Section 208 is "any person"—and certainly does not allow for states to make further exclusions. *See, e.g.*, *LaRose*, 2024 WL 3495332, at *10 ("Section 208 does not say . . . that disabled voters are limited to 'a person of the voter's choice *from a list to be determined by*

*the several states*.'") (emphasis original); *Disability Rts. N.C.*, 602 F. Supp. 3d 872, 878 (E.D.N.C. 2022) (similar); *see also Ark. United*, 626 F. Supp. 3d at 1085 ("With the exception of the voter's employer or union representative, Congress wrote § 208 to allow voters to choose any assistor they want."); *Carey*, 624 F. Supp. 3d at 1032 ("[T]he VRA allows plaintiffs to receive assistance from 'a person of [their] choice,' so long as that person is not their 'employer or agent of that employer or officer or agent of [their] union.'").

Moreover, "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (citation omitted). "With the exception of the voter's employer or union representative, Congress wrote § 208 to allow voters to choose any assistor they want." *Ark. United*, 626 F. Supp. 3d at 1085. A state cannot, as Alabama attempts here, define the terms of assistance "more restrictively than as federally defined." *OCA-Greater Houston*, 867 F.3d at 615. Rather, a state's "limitation on voter choice" serves to "impermissibly narrow[] the right guaranteed by Section 208." *Id*.[14]

---

[14] The United States Department of Justice ("DOJ") filed a Statement of Interest below in support of Plaintiffs' reading of Section 208. *See* SA Doc. 51; *Lopez v. Monterey Cnty.*, 525 U.S. 266, 281 (1999) (explaining that DOJ's views on the VRA are "traditionally afford[ed] substantial deference"). For decades, DOJ has read Section 208 to preempt state laws seeking to limit who can assist 208 voters. *See, e.g.*, Ltr. from Dep't of Just. C.R. Div. to Att'y Gen. of Fla. 2 (Jan. 15, 1985),

Alabama ignores essentially all this authority, invoking a few outlier cases that cannot be reconciled with Congress's clear intent. *See* Def.'s Br. at 29 (citing *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 732 (E.D. Mich. 2022) and *Ray v. Texas*, No. 06 Civ. 385, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008)). But *Priorities USA* and *Ray* are out-of-circuit district court decisions that ignore the plain meaning of "a person" and flout the canon that enumerated exceptions are presumed to be exclusive. *See LaRose*, 2024 WL 3495332, at *14 ("*Priorities USA* discusses 'a person' but does not address 'of the voter's choice.'"). And *Ray* was abrogated by the later Fifth Circuit decision in *OCA-Greater Houston*. *Ray* had upheld a Texas statute limiting the number of voters for whom an assistor could serve as an early voting application witness and was not appealed—but in a subsequent litigation challenging a different Texas law, the Fifth Circuit explained: "We must conclude that the limitation on voter choice . . . impermissibly narrows the right guaranteed by Section 208 of the VRA." *OCA-Greater Houston*, 867 F.3d at 615.

Alabama also cites two state court cases that disregard Section 208's text. *See* Def.'s Br. at 29 (citing *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1197 (Ill. App. Ct.

---

https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/FL-1010.pdf; Ltr. from Dep't of Just. C.R. Div. to Assistant Att'y Gen. of Va. 1-2 (Aug. 3, 1984), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/VA-1190.pdf; Ltr. from Dep't of Just. C.R. Div. to Bolivar Cnty. Miss. Bd. of Election Comm'ns 2 (Apr. 16, 1984), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/MS-1880.pdf.

2004) and *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1133 (Pa. Commw. Ct. 1995), *aff'd*, 673 A.2d 905 (Pa. 1996) (mem.)). These cases "are not persuasive" because they "relied on a misinterpretation of Section 208's plain text to create exceptions not found within the statute based on improper policy considerations this Court is prohibited from making." *LaRose*, 2024 WL 3495332, at \*14 n.6. For example, the court in *Qualkinbush* incorrectly ruled that the VRA is "only applicable to federal elections." 826 N.E.2d at 1193. But the VRA's text and controlling precedent are clear that it applies to "*any* primary, special, or general election" 52 U.S.C. § 10310(c)(1) (emphasis added); *see Oregon v. Mitchell*, 400 U.S. 112, 118 (1970). Likewise, *DiPietrae* provides no support for Alabama's reading. While the state court did uphold a limit on the number of voters a given person could assist, the court did not address whether this limit violated Section 208. *See* 666 A.2d at 1134-36. Indeed, it conducted no analysis of Section 208's text at all. *See id.* Still, the *DiPietrae* court affirmed the right of "a disabled voter to appoint a person of his or her choice to obtain an absentee ballot application, to deliver it to the Election Board, to obtain an absentee ballot from the Board and to deliver the completed ballot." *Id.* at 1135.

The plain text of Section 208 is unambiguous that Congress intended not to allow further restrictions on assistance beyond that which it enumerated within Section 208 itself. Accordingly, it is not necessary to look to the legislative history

of Section 208. But the legislative history plainly reinforces that Congress did not intend to permit states to add restrictions on 208 voters' right to assistance. Moreover, the District Court was therefore fully entitled to consider the Senate Report in reaching its conclusion.

Although Plaintiffs maintain that Section 208's text evinces Congress's clear intent, the District Court found the text itself "ambiguous" as to the meaning of "a person of a voter's choice." App. Doc. 76 at 4. The District Court then looked to the legislative history to ascertain Congressional intent—which it was well within its discretion to do. As this Court has explained, the task of assessing Congressional intent—and thereby, of assessing whether the presumption against preemption is overcome—requires examining, "if necessary, the legislative history." *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022).

Specifically, the District Court looked to the Senate Report, S. Rep. No. 97-417 (1982), *i.e.*, the "authoritative source for legislative intent" regarding the 1982 amendments to the VRA. *Thornburg v. Gingles*, 478 U.S. 30, 43 n.7 (1986); *see also Allen v. Milligan*, 599 U.S. 1, 29-30 (2023) (citing the Senate Report to interpret the VRA). Alabama now suggests that the District Court was not entitled to consider this authoritative source. *See* Def.'s Br. at 36-38. That invitation to cast aside basic statutory construction principles is without merit and must be rejected.

And review of the Senate Report only further compels the conclusion that SB1 is preempted by Section 208. According to Congress, the "purpose" of Section 208 is to specify "the method by which the voters who are blind, disabled, or illiterate are entitled to have assistance in a polling booth from a person of their own choosing, with two exceptions." S. Rep. 97-417, at 2. Indeed, before 1982, Alabama and many other states permitted voters to receive assistance *only* from poll officials, *see, e.g*., *Gilmore*, 435 F. 2d at 489, but Congress rejected such a limitation because "it is only natural that many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice," S. Rep. 97-417, at 62; *see, e.g.*, *Harris*, 695 F. Supp. at 525 (enjoining under Section 2 of the VRA state laws that restricted aid to voters because Alabama "poll officials refused to help illiterate black voters or refused to allow them to vote," or were "intimidating toward black voters"). Congress determined that "people requiring assistance in some jurisdictions are forced to choose between casting a ballot under adverse circumstances or not being able to choose their own assistance or forfeiting their right to vote," and that "some people in this situation do in fact elect to forfeit their right to vote." S. Rep. 97-417, at 62. Congress decided that "having assistance provided by election officials"—or anyone other than chosen assistors— "discriminates against those voters who need such aid because it infringes upon their right to a secret ballot and can discourage many from voting for fear of intimidation

or lack of privacy." *Id*. at 62 n.207. Because "many [208] voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice," Section 208 preempts state laws that "unduly burden" the right to select an assistor. *Id*. at 62-63.

The House Report is also instructive. Tellingly, in amending the VRA in 1982, Congress also understood that the "failure to provide. . .assistance to illiterate[]" voters was evidence of discrimination. H. Rep. 97-227, at 14-15 (1982). As examples of discrimination, Congress cited incidents where Alabama prosecuted a man for assisting people with registering to vote and where Georgia officials threatened assistors who stood outside the polls with arrest. *Id*. Congress thus anticipated that laws that, like SB1, restrict assistance for 208 voters would violate the VRA.

Accordingly, the legislative history is clear that, far from an "abstract and unenacted legislative desire," Def.'s Br. at 38, Congress was preventing states from further restricting assistance for 208 voters. And despite Alabama's efforts to obscure the matter, Section 208 is the "clear and manifest intent" of Congress, confirmed by the legislative history, that states cannot restrict voters' choice of assistance in the way SB1 does here. That Section 208 was enacted long ago—when "myriad state laws could fairly be said to leave certain voters no 'choice'" of assistor, Def's. Br. at 28—cannot alter Congress's clear intent to assure Section 208 voters their full choice

of assistor going forward.[15, 16]

### 2. The Challenged Provisions of SB1 Are Preempted as a Matter of Law—and Alabama is Incorrect in Seeking to Transform this "Pure Legal Question" Into an Inapplicable Balancing Test.

The District Court "easily" and correctly determined that SB1 denies the right of Section 208 voters to the assistor of their choice. App. Doc. 76 at 3-5. As the District Court explained, the "Payment and Gift Provisions are in direct conflict with Section 208 because their restrictions would unduly burden the rights of blind, disabled, or illiterate voters to obtain third-party assistance" and the "Submission Restriction flatly prohibits third-party ballot-return assistance to disabled, blind, or illiterate voters needing such assistance." App. Doc. 84 at 9 (citations omitted). Alabama's attempts to read new terms into SB1 to try to save it must be rejected.

As to the Payment and Gift Provisions, Alabama's arguments fall flat including by their own contradiction. In one place, Alabama atextually contends that

---

[15] Alabama itself cites a Georgia law limiting assistance for illiterate voters (including on the number of voters an assistor could aid) that was struck down as unconstitutional nearly twenty years before the enactment of Section 208. *See* Def.'s Br. at 28 (citing *Morris*, 261 F. Supp. 538). This only further underscores the broad right to choice of assistor enshrined by Congress when it enacted Section 208.

[16] Alabama also contends that the language "a person of the voter's choice" does not prevent state-imposed limits on choice since courts place limits on even the Sixth Amendment right to counsel. Def.'s Br. at 27. This analogy is entirely off base. The Sixth Amendment has nothing to do with Congress's intent with respect to Section 208 of the VRA, and the actual text of the Sixth Amendment guarantees a right to "the Assistance of Counsel," and says nothing about counsel of one's choice. Alabama provides no authority to support why this Court should impute treatment of the Sixth Amendment to the Section 208 context here.

paid assistors (like "paid caregivers") only run afoul of SB1 if they receive a "bonus" for providing that assistance. Def.'s Br. at 43-44. However, SB1 says nothing about such a "bonus" or whether the payment/gift needs to be quid pro quo solely for the absentee voting assistance to violate the law—the Payment and Gift Provisions refer only to "knowing" receipt of a payment or gift, with no exemption where payment is simply one's regular wage. *See* Ala. Code § 17-11-4(d)(1)-(d)(2). Pointedly, while disclaiming that "paid caregivers" can be prosecuted, Alabama *never* suggests that other salaried employees or volunteers (like those of Plaintiffs) receiving reimbursement or token gifts in the ordinary course of their work and not as a "bonus" for any specific assistance can do so without fear of prosecution. To the contrary, when asked by the District Court during oral argument whether an individual affiliated with Plaintiffs "being paid and/or gifted as a volunteer" to participate in a voting-advocacy event could assist a blind or disabled voter who requests their help, counsel for Defendant responded: "typically, no." App. Doc. 62 at 28:12-22. This only underscores that Alabama's argument is itself internally contradictory and SB1 does not contain any "bonus" limitation as Alabama now seeks to add.[17]

---

[17] Even if such a limitation did exist in SB1 (which it does not), it could not cure the conflict with the broad right of Section 208 voters to their choice of assistor.

As to the Submission Restriction, Alabama unavailingly argues that it does not violate Section 208 because another provision of SB1 parrots the text of Section 208 by stating that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by an individual of the voter's choice." Def.'s Br. at 48 (quoting Ala. Code § 17-11-4(e)). Although SB1 essentially recites Section 208's language in this provision, nothing in SB1 states that this provision exempts assistors from prosecution under the Submission Restriction. Rather, the clear text of the Submission Restriction prohibits *all* aid with submissions without limitation. Notably, SB1 contains a separate, differently worded provision that protects military and overseas voters. Unlike the Submission Restriction, Section 17-11-4(f) provides: "Voters voting by absentee ballot through the Uniformed and Overseas Citizens Absentee Voting Act *are not subject to this section*." Ala. Code § 17-11-4(f) (emphasis added). Section 17-11-4(f)'s different approach underscores that Alabama understood how to exempt other federally protected voters, but pointedly failed to do so under the Submission Restriction. Nowhere does SB1 (or any other state law) specify that chosen assistors are safe from prosecution under the Submission Restriction.

Thus, the District Court reached the inescapable conclusion that even if "any voter" can receive assistance under Section 17-11-4(e), this is illusory because the competing Submission Restriction "flatly prohibits" any assistor from giving it. App.

Doc. 84 at 9. "[A] state cannot restrict this federally guaranteed right [under Section 208] by enacting a statute tracking its language, then defining terms more restrictively than as federally defined." *OCA-Greater Houston*, 867 F.3d at 615.

Alabama also contends—for the first time, on appeal—that this Court should impose "a narrowing construction" to save the Submission Restriction. *See* Def.'s Br. at 50 (citing *Henry v. Att'y Gen.,* 45 F.4th 1272 (11th Cir. 2022)). As an initial matter, this argument is waived for failure to raise it before the District Court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Moreover, Alabama's own cited authority makes clear that any "narrowing construction" would be inappropriate. Such a construction would require this Court to rewrite the Submission Requirement to clarify that it does not permit the prosecution of the chosen assistors of Section 208 voters, despite the clear text of SB1. *See Henry*, 45 F.4th at 1292 ("[W]e will not 'rewrite the clear terms of a statute in order to reject a facial challenge.'") (citation omitted). Furthermore, any such redrafting would raise serious federalism and separation of powers concerns. *See, e.g.*, *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) ("[A]s a federal court, we must be particularly reluctant to rewrite the terms of a *state* statute.") (emphasis original). While courts ordinarily should read statutes "as harmoniously as possible," Def.'s Br. at 49 (citation omitted), this does not involve engrafting new terms to achieve such harmony, *see Dimmitt*, 985 F.2d at 1572.

Neither this Court, nor Plaintiffs, can rely on Alabama's mid-litigation promise that "voters who cannot physically submit their application may receive 'required assistance.'" Def.'s Br. at 48 (citations omitted). Such non-binding promises are just that and thus cannot cure the problem—particularly not given the severity of the criminal penalties at stake. *See, e.g.*, *Stenberg v. Carhart*, 530 U.S. 914, 940-41 (2000); *ACLU v. Fla. Bar*, 999 F.2d 1494 (11th Cir. 1993).

And Alabama cannot escape the conflict with Section 208 via its framing that the Challenged Provisions do not exclude "any category of people from assisting" but simply constrain the "form" of their assistance. Def.'s Br. at 24. As an initial matter, as discussed, the Submission Restriction outright excludes anyone from helping another voter with the physical submission of their application and the Payment and Gift Provisions excludes Plaintiffs, paid caregivers, and others from assisting more broadly. Moreover, whether the Payment and Gift Provisions are considered as regulating assistors or the manner of their assistance, this is a distinction without a difference and violates Section 208 either way. This is because the effect is the same: voter choice is limited beyond what Section 208 permits, in direct conflict with federal law. Indeed, no Section 208 case has turned on the distinction that Alabama attempts to draw here. Rather, other cases applying Section 208 have found preemption as to state laws that could be characterized as regulating "form" of assistance rather than banning specific assistors outright. For example, in

*OCA-Greater Houston*, the Fifth Circuit ruled that Section 208 preempted a Texas law that imposed residency requirements on assistors. 867 F.3d at 614-15; *see also, e.g.*, *La Union Del Pueblo Entero*, 2024 WL 4488082, at *53 (enjoining, *inter alia*, ban on compensated assistance); *Ark. United*, 626 F. Supp. 3d at 1087 (enjoining law limiting the number of voters an assistor could assist).

And to be certain, Alabama's argument that assistors simply can choose not to receive a payment or gift does not cure SB1's defect. Chosen assistors include salaried employees and compensated volunteers who cannot transform into an "unpaid" assistor. For example, Dr. Peebles (who has cerebral palsy and quadriplegia) would choose a paid employee of Plaintiff Alabama Disabilities Advocacy Program ("ADAP") to assist him. *See* App. Doc. 74-4 ¶ 8. Because this employee is paid by ADAP, this paid assistor would risk prosecution under SB1.

Alabama further misconstrues the District Court's rulings and attempts to transform the "pure legal question" of Section 208 preemption into an inapplicable balancing test. See Def.'s Br. at 40-45. Essentially, Alabama seizes on the District Court's use of the phrase "undue burden" from the Senate Report to suggest— invoking unrelated contexts like abortion case law—that Section 208 preemption turns on some balancing inquiry. But as the District made "clear," its order was based on "the legal doctrine of conflict preemption" which is a "purely legal issue." App. Doc. 84 at 5.

The District Court then did not impose (let alone disregard) any balancing framework: instead, it properly held that "any law that limits a § 208 voter's choice or provides additional exceptions to this right unduly burdens the rights of § 208 voters, and is, as a matter of law, in conflict with § 208." *Id.* at 6. "Taken in proper context," the Senate Report's references to phrases such as "unduly burden" and "dependent upon the facts" relate only to the "question of what the challenged state law prohibits." App. Doc. 76 at 10-11. The District Court therefore "easily" concluded that—as a matter of law—"SB 1 unduly burdens the rights of Section 208 voters to make a choice about who may assist them in obtaining and returning an absentee ballot." *Id.* at 4. In other words, Congress already decided it is an undue burden to limit a 208 voter's choice of assistor—there is no subsequent balancing test to perform. *See id.* at 9-10.

For purposes of the preemption analysis, Plaintiffs thus were not required to identify any certain number of voters who face particular burdens (or conduct any balancing of the burdens caused by the deprivation of their federal right). *See* Def.'s Br. at 43. Given the pure legal question, evidence of burden on voters is "unnecessary to the court's injunctive-relief determination." Doc. 76 at 9; *see OCA-Greater Houston*, 867 F.3d at 614-15 (affirming summary judgment for plaintiffs on Section 208 preemption claim); *LaRose*, 2024 WL 3495332, at *15 (summary judgment for

plaintiffs on same) *Disability Rts. N.C.*, 2022 WL 2678884, at *7 (same); *Ark. United*, 626 F. Supp. 3d at 1087 (same).

In any event, Plaintiffs *have* identified multiple affected voters—and Alabama's attempt to recast them as falling outside of SB1's prohibitions all fail. For example, because it is unlawful under the Submission Restriction to submit another's "completed absentee ballot application," Ala. Code § 17-11-4(c)(2), Ms. Faraino's mother could be prosecuted for mailing her application even though Ms. Faraino cannot use her arms, *see* App. Doc. 74-3 ¶¶ 2, 6. Alabama's only response again is that SB1 allows the voter to get help under Ala. Code § 17-11-4(e). Def.'s Br. at 43. But as discussed, even if "any voter" can receive assistance under § 17-11-4(e), the competing Submission Restriction still "flatly prohibits" any assistor from providing it, rendering the right to assistance illusory. App. Doc. 84 at 9. Likewise, as mentioned, Dr. Peebles, who has cerebral palsy and quadriplegia, would choose a paid employee of ADAP as his assistor. *See* App. Doc. 74-4 ¶ 8. Alabama has no response to why this is not prohibited by the Payment and Gift Provisions except to note that Dr. Peebles did not name a specific ADAP employee. *See* Def.'s Br. at 43. But Dr. Peebles is not required to name a specific ADAP employee. The fact that he would choose assistance of a paid employee demonstrates that such assistor would be restricted by SB1, thereby infringing on Dr. Peebles' choice under Section 208. Further, Dr. Peebles is reasonably concerned that should his "paid care attendants"

33

assist him with his absentee ballot application, SB1 "put[s] [them] in the position of risking a criminal conviction." *Id.* ¶ 8. Here, Alabama merely asserts that only caregivers who "get a bonus for absentee ballot application services" are barred from assistance, Def.'s Br. at 43-44—but as discussed *supra* at pp. 26-27, SB1 is not so limited. Again, nothing explains why paid caregivers can provide such assistance when, by Alabama's own admission during argument below, paid employees like those of ADAP who are asked to assist and do not receive any payment beyond their regular salary cannot. *See* App. Doc. 62 at 28:12-22. Similarly, Messrs. Courie and McKee are chronically disabled voters whose chosen assistor is a volunteer from Plaintiff League of Women Voters of Alabama ("LWV"). App. Doc. 74-1 ¶¶ 4-6; App. Doc. 74-2 ¶¶ 4-6. Under SB1, however, the volunteer could be prosecuted for receiving "gifted pens and t-shirts" from LWV for her volunteer work. App. Doc. 74-1 ¶¶ 6-7; App. Doc. 74-2 ¶¶ 6-7. Alabama's sole response is that SB1 would not apply to this assistor because those tokens were "previously given." Def.'s Br. at 43. Yet SB1 contains no such temporal limitation (nor does it say anything about liability for future tokens the volunteer might receive).

As the District Court observed, "common sense indicates that when Section 208 voters are deprived of their federal right to choose who they want to assist them" the "very types of problems" faced by these declarants in accessing their right to vote "will ensue." App. Doc. 76 at 9. Although not required, such evidence reinforces

the clear conflict with federal law. And "[t]o say that these voters have other people who could help them . . . is beside the point" because "Section 208 guarantees blind, disabled, and illiterate voters the 'assistance by a person of the *voter's* choice.'" App. Doc. 84 at 5 (emphasis original) (quoting Section 208).

Finally, Alabama's assertion that SB1 affects "so few" people is as inaccurate as it is irrelevant. Def.'s Br. at 44 (citing *Geier v. Am. Honda Motor Co*., 529 U.S. 861, 885 (2000)). Alabama admits that the state is home to hundreds of thousands of voters entitled to protection under Section 208. *Id* at 43. Far from a "few" people, over 900,000 Alabamians have low literacy, over 450,000 have limited mobility, and over 300,000 are blind. *See* SA Doc. 82-5; SA Doc. 82-7. Some of these may overlap and others may not require assistance to vote absentee—but even if only a fraction required help, SB1 undoubtedly restricts the rights of many voters. In short, SB1 plainly "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" to guarantee the assistance of potentially thousands of Alabama voters' choice. *Geier*, 529 U.S. at 873, 886. Thus, the District Court correctly rejected Alabama's suggestion that "SB 1 erects no barrier for § 208 voters to receive necessary assistance from people voters actually choose as helpers—e.g., spouses, family members, caregivers, neighbors, nurses, and volunteers." Def.'s Br. at 42.

And any argument that it is not "impossible" to comply with both statutes

likewise fails. Def.'s Br. at 39-40. It is plainly "impossible" for any Section 208 voter "to choose an assistor who is permitted by Section 208 but disqualified by [SB1]." *La Union Del Pueblo Entero*, 2024 WL 4488082, at \*53; *see Ark. United*, 626 F. Supp. 3d at 1085 (similar).

### B. The "Limited Injunction" Here Does Not Undermine Alabama's Asserted Interest in Addressing Voter Fraud.

Despite Alabama's protestations, nothing about Section 208, let alone the District Court's "limited injunction," violates federalism or otherwise precludes states from regulating the conduct of their elections. As the District Court explained, the preliminary injunction only suspends SB1 for Section 208 voters and their chosen assistors, and only to the extent required by federal law. "[N]othing in this injunction would limit Alabama from investigating and addressing fraud in the procurement of absentee ballots." App. Doc. 76 at 6-7. Rather, "[t]he injunction still allows Defendant to ferret out and prosecute fraud and all other election crimes involving any voter or assistor." App. Doc. 84 at 10. Meanwhile, numerous other federal and state laws criminalize voter coercion, intimidation, or fraudulent inducement. *See, e.g.*, Ala. Code §§ 17-17-33, 38, 39; 52 U.S.C. § 10307. By definition, such conduct does *not* constitute "choice" and is not protected under Section 208 or the injunction. "Defendant's argument completely ignores that Congress placed the voter's *choice* at the center of its § 208 guaranteed right." App. Doc. 84 at 8 (emphasis original).

And any claim that SB1 "does not conflict with [Section 208] because it serves the same purpose" of stopping fraud fails because Congress clearly "contemplated" that concern in crafting Section 208, and "[s]tates are not permitted to limit the right to assistance further." *Disability Rts. N.C.*, 2022 WL 2678884, at *5. There is no exception to the Supremacy Clause when a state believes it has strong interests in overriding federal law: "[i]t is not enough to say that the ultimate goal of both federal and state law is the same" because "[a] state law also is preempted if it interferes with methods by which the federal statute was designed to reach that goal." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) (cleaned up). Moreover, "[u]nder the Supremacy Clause of the Federal Constitution, '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law' for 'any state law, . . . which interferes with or is contrary to federal law, must yield.'" *Felder v. Casey*, 487 U.S. 131, 138 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)); *see also, e.g.*, *LaRose*, 2024 WL 3495332, at *18 (rejecting claim that Section 208 injunction might expose a political party to "new illegitimate competitive tactics" because the "clear violation of [the] federally guaranteed voting right" outweighs any alleged harm); *Ark. United*, 626 F. Supp. 3d at 1086 (rejecting state's contention that the challenged law is "not preempted" because it serves state's "compelling interests in election integrity [and] fighting voter fraud," because there is no "exception to the Supremacy Clause when a state

37

has a compelling interest in enacting a statute that conflicts with federal law").

Moreover, Alabama's arguments mirror those of the dissent in *United States v. Louisiana* in 1966, which raised the specter that the VRA's requirement that illiterate voters are entitled to aid "opens the door to fraudulent elections." 265 F. Supp. 703, 717 (1966) (West, J., dissenting). But, in affirming the majority's decision, the Supreme Court implicitly rejected this argument. *Louisiana v. United States*, 386 U.S. 270 (1967) (mem.); *see also Garza*, 320 F. Supp. at 139 (holding that restrictions on assistance for illiterate voters "cannot be justified by the state's interest in preventing or limiting election fraud"); *see also* S. Rep. No. 97-417, at 63 n.210 (citing *Garza*, 320 F. Supp. 131).

Alabama's suggestion that requiring it to comply with clear federal law will somehow give way to "upheaval of the federal-state balance" also has no merit. Def.'s Br. at 35. Numerous other courts have properly applied Section 208 and found state laws limiting Section 208 voters' choice of assistor to be preempted—without any calamitous result. *See, e.g.*, *OCA-Greater Houston*, 867 F.3d at 614-15; *LaRose*, 2024 WL 3495332, at *15; *Disability Rts. N.C.*, 2022 WL 2678884, at *7; *Ark. United*, 626 F. Supp. 3d at 1087; *Carey*, 624 F. Supp. 3d at 1033; *Democracy N.C.*, 476 F. Supp. 3d at 235. And, despite Alabama's various references to other state

laws, this Court is not asked to consider any law besides SB1.[18] Alabama's quarrel is with the Supremacy Clause and Section 208 (a forty-year-old law), but that is not a basis to avoid or otherwise alter its application.

Puzzlingly, Alabama also suggests that it must be allowed to restrict Section 208 voters' access to assistance of their choice via SB1 because its doubts the "efficacy of after-the-fact prosecutions." Def.'s Br. at 46. But like any other criminal statute, SB1 is only enforceable via an "after-the-fact" prosecution. Moreover, to the extent Alabama is dissatisfied with preexisting laws, *see* Def.'s Br. at 47, this still does not sanction its wielding SB1 in a way that violates the Supremacy Clause.

Alabama also now cursorily suggests, for the very first time in this litigation, that Congress may have somehow "exceeded its enforcement powers under the Fourteenth and Fifteenth Amendments" if Section 208 applies as it is intended. Def.'s Br. at 36 (citing *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1231 (11th Cir. 2005)). As an initial matter, this argument is waived as it was not raised below. *See Access Now, Inc.*, 385 F.3d at 1331. Moreover, Congress's enforcement authority is in no way in doubt: the Supreme Court has long recognized Congress's broad authority to enact prophylactic legislation under both the Fourteenth and Fifteenth Amendments. *See Milligan*, 599 U.S. at 41 (citing *City of Rome v. United*

---

[18] Plaintiffs take no position regarding whether any other state law cited by Alabama violates Section 208.

*States*, 446 U.S. 156, 173 (1980)). And it is well established that "measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments." *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997).

Alabama's related and equally cursory (and waived) suggestion that Section 208 is somehow not congruent and proportional also must be rejected. *See* Def.'s Br. at 35 (citing *Boerne*, 521 U.S. at 520). First, federal laws enacted under the Fifteenth Amendment need only be "rational." *Shelby Cnty. v. Holder*, 570 U.S. 529, 550 (2013). "Congress may use any rational means to effectuate the constitutional prohibition of racial discrimination in voting." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966). Prior to the VRA, states commonly prohibited or severely restricted aid for illiterate voters to discriminate against Black voters and language minorities. *See, e.g.*, *Katzenbach*, 383 U.S. at 312-13; *United States v. Mississippi*, 380 U.S. 128, 134-35 (1965); *United States v. Lynd*, 349 F.2d 790, 792-93 (5th Cir. 1965); *Alabama*, 304 F.2d at 587. "All literacy tests *and similar voting qualifications* were abolished by [the VRA]. Although such tests may have been facially neutral, they were easily manipulated to keep blacks from voting." *MUD*, 557 U.S. at 198 (emphasis added). Section 208 is designed to effectuate this national ban on literacy tests, 52 U.S.C. § 10501, and its "implicit requirement" that people who cannot read or understand voting forms "may not be denied assistance." S. Rep. 97-417, at 63.

As a corollary to the literacy test ban, Section 208 is also a rational means of addressing this pervasive history of discrimination. *See Boerne*, 521 U.S. at 525-26; *Mitchell*, 400 U.S. at 118. In enacting Section 208, Congress was aware that this discrimination via restrictions on assistance persisted after 1965. *See* S. Rep. 97-417, at 62-63 & nn.208-210; H. Rep. 97-227, at 14-15; *see also, e.g.*, *Coal. for Educ. in District One v. Bd. of Elections*, 370 F. Supp. 42, 52-53 (S.D.N.Y. 1974), *aff'd* 495 F.2d 1090 (2d Cir. 1974); *P.R. Org. for Pol. Action v. Kusper*, 490 F.2d 575, 580 (7th Cir. 1973); *Gilmore*, 435 F.2d at 491-92; *see also supra* nn.4-5. Such discrimination continued after 1982. *See, e.g.*, *OCA-Greater Houston*, 867 F.3d at 614-15; *N. Carolina State Conf. of NAACP v. McCrory*, 831 F. 3d 204, 217 (4th Cir. 2016); *Nick v. Bethel*, No. 07 Civ. 98, 2008 WL 11456134 (D. Alaska Jul. 30, 2008); *United States v. Long Cnty*., No. 06 Civ. 40, 2006 WL 8458526, at *1 (S.D. Ga. Feb. 10, 2006); *United States v. Charleston Cnty*., 316 F. Supp. 2d 268, 289 n.23 (D.S.C. 2003), *aff'd* 365 F.3d 341 (4th Cir. 2004); *United States v. Berks Cnty*., 277 F. Supp. 2d 570, 580-81 (E.D. Pa. 2003); *Harris*, 695 F. Supp. at 525; *see also supra* n.14.[19]

Section 208 is also congruent and proportional with Congress's Fourteenth Amendment authority to enact prophylactic protections for people with disabilities

---

[19] Today, Black Alabamians have disproportionately low literacy, *see* SA Doc. 82-6, meaning that the "obvious" effect of any literacy requirement remains discriminatory, *Lodge v. Buxton*, 639 F.2d 1358, 1363 (5th Cir. 1981), *aff'd sub nom. Rogers v. Lodge*, 458 U.S. 613 (1982).

based on "a pattern of unequal treatment in the administration of a wide range of public services, . . . including . . . voting." *Tennessee v. Lane*, 541 U.S. 509, 525 (2004) (upholding the constitutionality of a related prophylactic law that protects voters with disabilities); *see also* S. Rep. 97-417, at 62-63 (documenting a pattern of discrimination against voters with disabilities). "[I]n light of Congress's findings regarding the obstacles faced by [Section 208] voters, . . . permitting such voters to have an assistor of their choice is a congruent and proportional remedy to enforce the guarantees of the Equal Protection Clause." *Ark. United*, 517 F. Supp. 3d at 789.

Moreover, cases regarding the VRA's distinct pre-clearance requirements under Section 5 (which selectively apply to only some jurisdictions) and whether such requirements are "justified by current needs," are inapposite and do not undermine these well-settled principles. *See* Def.'s Br. at 36 (citing *MUD*, 557 U.S. at 203). The Supreme Court has never imported that analysis to any other portion of the VRA, let alone to Section 208. *See Milligan*, 599 U.S. at 41.

Finally, Alabama repeats its mistaken contention that Section 208 "contains no 'exceedingly clear language'" about Congress's intent. Def.'s Br. at 35 (citation omitted). Alabama also asks that the "canon of constitutional avoidance" be used to save SB1's infirmities. *Id.* at 36. But as just discussed, there is no potential constitutional infirmity that needs to be avoided. Moreover, "[t]he canon of constitutional avoidance does not supplant traditional modes of statutory

interpretation" and courts "cannot ignore the text and purpose of a statute in order to save it." *Boumediene v. Bush*, 553 U.S. 723, 787 (2008). Section 208 clearly prohibits what Alabama seeks: "[t]he three provisions of SB1 that [the District Court] enjoined—and again, only enjoined as applied to blind, disabled, and illiterate voters who are otherwise eligible to vote absentee in the first place—are irreconcilably in conflict with § 208 *as a matter of law*." App. Doc. 84 at 5 (emphasis original). Plaintiffs are thus substantially likely to succeed on their Section 208 claim.

## II. THE REMAINING EQUITABLE FACTORS FAVOR AFFIRMING THE PRELIMINARY INJUNCTION.

As to the remaining prongs of the preliminary injunction analysis, Alabama only addresses irreparable harm and therefore none of the other equitable factors are in dispute. *See* Def.'s Br. at 50. For completeness, however, all equitable factors are discussed here—all of which weigh in favor of affirming the District Court's ruling.

### A. Plaintiffs Indisputably Suffer Irreparable Harm Absent the Preliminary Injunction.

This is a case about infringement on the federally protected right of disabled, blind, and low literacy voters to receive voting assistance from "a person of their choice" except for two exceptions specifically enumerated by Congress. As the District Court explained, it is "not a close call" that SB1 will cause irreparable injury because it "purports to criminalize the act of giving Section 208 assistance to a

voter." App. Doc. 76 at 5-6. Alabama's suggestion that the District Court somehow "erred" in finding irreparable harm from 208 voters being deprived of their right to assistance is baffling. Def.'s Br. at 50. And Alabama's characterization of Section 208 voters' injury as "hypothetical and trivial," *id.* at 51, is unsupported and disregards the very real harm of being deprived of the federally guaranteed right to assistance in making one's vote effective.

Alabama first states that there is no "proof" of irreparable injury—apparently based again on its mistaken contention that SB1's restrictions on voter choice are permissible under Section 208. Def.'s Br. at 51. But as discussed, the Challenged Provisions plainly violate the voter-choice guarantees of Section 208. It is unclear what more "proof" could be required: blocking Section 208 voters from choosing their preferred assistor constitutes irreparable harm to their right to such assistance. *Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1351 (N.D. Ga. 2020), *aff'd sub nom. Gonzalez v. Governor of Ga.*, 978 F.3d 1266 (11th Cir. 2020). "A restriction on the fundamental right to vote . . . constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

Further, by Defendant's own admission, the Payment and Gift Provisions prohibit Plaintiffs' paid staff and volunteers who accept gifts such as gas money from serving as a Section 208 assistor. App. Doc. 62 at 28:12-22; *see* App. Doc. 69 at 57-58. These missed opportunities to assist Section 208 voters also constitute

irreparable harm, not only because unassisted voters may not be able to vote at all but also because those opportunities for voter engagement have been permanently lost. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005). Moreover, the fear of prosecution for actions that are protected by federal law also constitutes irreparable harm. *See Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1268-69 (11th Cir. 2012) (holding that a district court did not abuse its discretion when it found that plaintiffs who were "under the threat of state prosecution for crimes that conflict with federal law" faced irreparable harm).

Alabama's related contention that there has been no "denial of the right to vote" is similarly unavailing. Def.'s Br. at 51. That there may be other theoretical assistors not criminalized by SB1 does not change that SB1 deprives many 208 voters of the assistor "*of their choice*." App. Doc. 76 at 11 (emphasis added). As confirmed by the declarations from disabled and blind voters in this case, each of them suffered infringements on their choice of assistor because of SB1. *See* App. Doc. 74-1; Doc. 74-2; Doc. 74-3; Doc. 74-4. This is not a "misreading of SB1," Def.'s Br. at 52, but the only logical result "when Section 208 voters are deprived of their federal right to choose who they want to assist them," App. Doc. 76 at 9. The district court did not abuse its discretion in finding irreparable harm in the absence of a preliminary injunction.

**B. Alabama Suffers No Harm From the Limited Preliminary Injunction Requiring It To Follow Federal Law, and Such Injunction is Plainly in the Public Interest.**

As noted, Alabama does not contest the other preliminary injunction factors. For the avoidance of doubt, these too weigh in favor of affirming the preliminary injunction here.

The District Court properly held that Alabama suffers *no* harm from the "limited injunction" at issue, let alone to outweigh the harm to Plaintiffs and Section 208 voters more broadly. App. Doc. 76 at 6-7. The injunction does "not require the Attorney General to do anything" but comply with federal law, and thus has "minimal" (if any) impact on the state's asserted interest of preventing voter fraud and confusion. *Id*. at 7. As the District Court explained—and as discussed above— the injunction "leave[s] in place all of the tools designed to detect and prosecute fraud with respect to non-Section 208 voters," and does nothing to "limit Alabama from investigating and addressing fraud in the procurement of absentee ballots." *Id*. Moreover, any suggestion that the injunction undermines an interest in preventing voter intimidation is baseless: as the District Court noted, "§ 208 itself supplies the response" to this argument, "and that answer is" that "Congress determined that the best measure to protect § 208 voters against manipulation and improper influence is to allow those voters themselves to choose who will give them assistance." *Id*. at 8.

It is also well settled that the State can have no legitimate interest in the

46

enforcement of a criminal provision that violates federal law. *See United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) (holding that there can be "no harm from the state's nonenforcement of invalid legislation"). And even if Alabama's interests were somehow minimally harmed, "the clear violation of a federally guaranteed voting right in this case outweighs" any injury to the State. *LaRose*, 2024 WL 3495332, at *18; *see also Ga. Latino All. for Hum. Rts.*, 691 F.3d at 1269 ("Plaintiffs are under the threat of state prosecution for crimes that conflict with federal law, and we think enforcement of a state law at odds with [federal voting rights] is neither benign nor equitable.").

Most fundamentally, "[i]t is clearly in the public's interest to ensure that every blind, disabled, and illiterate voter who is eligible to vote absentee may exercise that right." App. Doc. 84 at 10; *see* App. Doc. 76 at 7. Alabama provides no argument to the contrary—nor could it, since it is axiomatic that the "[f]rustration of federal statutes and prerogatives are not in the public interest." *Alabama*, 691 F.3d at 1301. Like all other factors, the public interest weighs heavily in favor of affirming the preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the District Court's grant of a preliminary injunction.

Dated: January 10, 2025            Respectfully submitted,

                                   /s/ Anuja D. Thatte
                                   Anuja D. Thatte
                                   Deuel Ross
                                   NAACP LEGAL DEFENSE &
                                   EDUCATIONAL FUND, INC.
                                   700 14th Street NW, Suite 600
                                   Washington, DC 20009
                                   (202) 249-2170
                                   athatte@naacpldf.org
                                   dross@naacpldf.org

                                   Samuel Spital
                                   Tiffani Burgess
                                   Uruj Sheikh
                                   NAACP LEGAL DEFENSE &
                                   EDUCATIONAL FUND, INC.
                                   40 Rector Street, 5th Floor
                                   New York, NY 10006
                                   (212) 965-2200
                                   spital@naacpldf.org
                                   tburgess@naacpldf.org
                                   usheikh@naacpldf.org

                                   Danielle M. Lang
                                   Alice C.C. Huling
                                   Valencia Richardson
                                   CAMPAIGN LEGAL CENTER
                                   1101 14th Street NW, Suite 400
                                   Washington, DC 20005
                                   (202) 736-2200
                                   dlang@campaignlegalcenter.org
                                   ahuling@campaignlegalcenter.org
                                   vrichardson@campaignlegalcenter.org

Laurel Hattix
Alison Mollman
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(703) 342-9729
lhattix@aclualabama.org
amollman@aclualabama.org

Bradley E. Heard
Sabrina Khan
Jess Unger
Ahmed Soussi
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org
ahmed.soussi@splcenter.org

William Van Der Pol, Jr.
Larry G. Canada
ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, AL 35487
(205) 348-4928
wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu

***Counsel for Plaintiffs-Appellees***

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing Opposition to Motion to Appeal contains 11,787 words, excluding the parts of the response exempted under Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, and consistent with Fed. R. App. P. 32(a)(7)(B)(i).

This motion has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, consistent with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6).

Dated: January 10, 2025

*/s/ Anuja D. Thatte*
Anuja D. Thatte

**Counsel for Plaintiffs-Appellees**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 10, 2025, I electronically filed this document using the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Anuja D. Thatte*
Anuja D. Thatte

**Counsel for Plaintiffs-Appellees**