**FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13111
_____

ALABAMA STATE CONFERENCE OF THE NAACP,
LEAGUE OF WOMEN VOTERS OF ALABAMA,
LEAGUE OF WOMEN VOTERS OF ALABAMA
EDUCATION FUND,
GREATER BIRMINGHAM MINISTRIES,
ALABAMA DISABILITIES ADVOCACY PROGRAM,

*Plaintiffs-Appellees,*

*versus*

ATTORNEY GENERAL, STATE OF ALABAMA,

*Defendant-Appellant,*

WILLIAM R. ADAIR, et al.,

*Defendants.*

2                    Opinion of the Court                    24-13111

———————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:24-cv-00420-RDP

———————————

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

In 2024, Alabama enacted SB1. That statute makes it unlawful to give a third party, and for a third party to receive, payment or a gift for several forms of absentee-ballot-application assistance. *See* ALA. CODE §§ 17-11-4(d)(1)–(2) (2025). The law also prohibits a person from submitting an absentee-ballot application, other than his own, to a county Absentee Election Manager. *Id.* § 17-11-4(c)(2).

Plaintiffs are organizations that fear they will be prosecuted under SB1 for absentee-ballot-application assistance they provide to blind, disabled, and illiterate voters. They contend that Section 208 of the Voting Rights Act preempts SB1. Section 208 states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. The district court agreed with Plaintiffs and preliminarily enjoined the Alabama Attorney General from enforcing the challenged provisions of SB1 with respect to blind, disabled, and illiterate voters. Now, the Alabama Attorney General appeals that order.

But SB1 is not a very clear law. It contains several vague and undefined terms, as well as what seem to be conflicting provisions. Those include a provision that repeats nearly verbatim the text of Section 208 of the Voting Rights Act. Without a single decision from an Alabama state court interpreting the scope of the law, we aren't sure what conduct it criminalizes—though penalties for violating SB1 can be stiff: up to twenty years in prison and a $30,000 fine. But if the correct interpretation of the law creates no liability for Plaintiffs, Plaintiffs may lack an injury-in fact to establish standing.

So with respect for comity and federalism, we certify several questions to the Alabama Supreme Court. These questions seek to determine whether Plaintiffs have alleged that they seek to engage in *any* conduct that SB1 prohibits. Because the Alabama Supreme Court is the ultimate arbiter of state law—and its interpretation of SB1 may resolve this election-law case—we respectfully certify the questions below to the Alabama Supreme Court.

## I. BACKGROUND

### A. *Statutory Background*

Alabama law generally permits absentee voting in only eight limited scenarios. A voter must (1) be absent from her county on Election Day; (2) be ill or have a physical disability that prevents her from going to the polls; (3) be working a required shift of at least ten hours during polling hours; (4) be a student at a school outside her residential county, which prevents her from going to the polls;

(5) be a member of, or spouse or dependent of a member of, the Armed Forces of the United States or similarly qualified to vote absentee under the Uniformed and Overseas Citizens Absentee Voting Act; (6) be an appointed election officer or poll watcher at a polling place other than her regular polling place; (7) be a caregiver for a family member, to the second degree of kinship, who is confined to his home; or (8) be incarcerated in prison or jail, but not convicted of a felony involving moral turpitude. ALA. CODE § 17-11-3(a) (2025).

Those who qualify to vote absentee, in general, must follow several steps to apply to do so. First, a voter must obtain the absentee-ballot application form, which they can (1) download online and print, (2) receive in hard copy from the voter's county Absentee Election Manager; or (3) receive by mail after mailing a written request to the Absentee Election Manager. Ala. Sec'y of State, *Absentee Voting Information*, https://perma.cc/TN8U-BRBG (last accessed Oct. 5, 2025). Second, after acquiring the absentee-ballot application form, a voter must complete it and return it in hard copy. *See id.* That requires filling out the form and providing a printed copy of the voter's photo ID. *See id.* And, finally, third, the voter must submit the physical application packet to their Absentee Election Manager in person or by mail or commercial carrier. ALA. CODE § 17-11-4(c)(1) (2025). Once the Absentee Election Manager approves the application, that Manager either mails or hands in person the absentee ballot to the voter. Ala. Sec'y of State, *Absentee Voting Information*, *supra*.

In March 2024, the Alabama Legislature enacted SB1, codi-fied at Alabama Code Section 17-11-4 (2025). The act, which the Alabama Attorney General asserts "seeks to protect voters from self-interested ballot harvesters . . . ," places restrictions on the how assistance on absentee-ballot applications may be provided. Plain-tiffs challenge three subsections of SB1 here.

The first two are the Payment and Gift Provisions. Under Alabama Code Section 17-11-4(d)(1), it is "unlawful for a third party to knowingly receive a payment or gift for distributing, ordering, requesting, collecting, completing, prefilling, obtaining, or deliver-ing a voter's absentee ballot application." This provision defines a Class C Felony, so it carries a sentence of between one-year-and-one-day's and ten years' imprisonment and a fine of up to $15,000. ALA. CODE §§ 13A-5-6(a)(3), 13A-5-11(a)(3), 17-11-4(d)(1) (2025). For its part, Section 17-11-4(d)(2) separately makes it "unlawful for a person to knowingly pay or provide a gift to a third party to dis-tribute, order, request, collect, prefill, complete, obtain, or deliver a voter's absentee ballot application." It is a Class B felony, exposing the offender to a sentence of between two and twenty years' im-prisonment and a fine of up to $30,000. *Id.* §§ 13A-5-6(a)(2), 13A-5-11(a)(2), 17-11-4(d)(2).

The third provision is the Submission Restriction. The Sub-mission Restriction makes it "unlawful for an individual to submit a completed absentee ballot application to the absentee election manager other than his or her own application . . . ." *Id.* § 17-11-4(c)(2). But it allows "an application for a voter who requires

emergency treatment by a licensed physician within five days before an election . . . [to] be submitted to the absentee election manager by an individual designated by the applicant." *Id.* Violation of the Submission Restriction is a Class A Misdemeanor, subject to penalties of imprisonment for up to one year and a fine of up to $6,000. *Id.* §§ 13A-5-7(a)(1), 13A-5-12(a)(1); 2024 ALA. LAWS 33, § 2.

The Payment and Gift Provisions and the Submission Restriction have two additional exceptions. First, none applies in situations when Alabama Code Section 17-11-3(f), which governs states of emergencies, does. *See id.* §§ 17-11-4(c)(2) & (d)(1)–(2). And second, under Section 17-11-4(f), "[v]oters voting by absentee ballot through the Uniformed and Overseas Citizens Absentee Voting Act are not subject to" the provisions.

SB1 also contains a provision to protect the rights of blind, disabled, and illiterate voters.[1] Under Section 17-11-4(e), "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by an individual of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." This provision takes its cue directly from Section 208 of the Voting Rights Act, codified at 52 U.S.C. § 10508, which has identical language except the term "an individual" is "a person" in that statute.

---

[1] As this paragraph explains, both Alabama Code Section 17-11-4(e) and Section 208 of the Voting Rights Act grant a right to assistance to a voter with an "inability to read or write." For ease of writing, this opinion sometimes refers to those voters by the shorthand "illiterate."

To date, we are unaware of any decision by an Alabama state court interpreting any provision of SB1.

### B. *Plaintiffs*

The case before us began with an action that five non-profit, non-partisan organizations brought.  These organizations have often assisted blind, disabled, and illiterate voters with absentee-ballot applications (collectively "Plaintiffs").  They include the Greater Birmingham Ministries ("GBM"), the Alabama State Conference of the NAACP ("Alabama NAACP"), the League of Women Voters of Alabama and League of Women Voters of Alabama Education Fund (together "LWVAL"), and the Alabama Disabilities Advocacy Program ("ADAP").  We offer a brief explanation of the work of each.

GBM describes itself as "a multi-faith, multi-racial, non-profit membership organization that provides emergency services to people in need and engages people to build a strong, supportive, and engaged community and to build a more just society for all people."  Established in 1969 during the Civil Rights Movement, the organization primarily serves Birmingham and Jefferson Counties.  There, it engages in voter education and assistance, including around absentee-ballot applications.  The organization does a lot of work with eligible incarcerated voters who must vote by absentee ballot.

 The Alabama NAACP is the state conference of the National Association for the Advancement of Colored People, Inc. ("NAACP"), with members who include Black registered voters

who are senior citizens, disabled, and undereducated. The organization describes itself as "the oldest and most significant civil rights organization in Alabama" with a "mission . . . to ensure the political, educational, social, and economic equality of Black Americans and all other Americans and to eliminate racial discrimination in the democratic process." The Alabama NAACP characterizes "voting and encouraging voting" as "foundational values," so it engages in absentee-ballot application assistance for blind, disabled, and illiterate voters.

Founded in 1920 out of the Alabama Equal Suffrage Association, LWVAL consists of a membership organization (and its education fund) that "seek[s] to encourage the informed and active participation of citizens in Alabama government through participation in public policy and voting." It views its work as "build[ing] on the history of the women's suffrage movement, which spurred [its] creation." LWVAL's members include voters who are over the age of 65 and disabled, and its work includes assisting these voters with absentee-ballot applications.

Finally, ADAP is Alabama's federally funded Protection and Advocacy agency for people with disabilities. Part of a federal network of these agencies established in 1974, its mission is to "provide legal advocacy services to protect and promote the civil rights, well-being, and equality of opportunity for individuals with disabilities, including in voting." Every disabled Alabamian is a constituent of ADAP.

For their work on voting, ADAP receives a federal grant called the Protection and Advocacy for Voting Accessibility grant, under Section 291 of the Help America Vote Act of 2002, Pub. L. No. 107–252, 116 Stat. 1666, 1702–03. Because many disabled voters rely on absentee voting, ADAP uses these grant funds in large part to assist individuals with absentee-ballot applications. ADAP also works with staff at residential facilities and mental-health hospitals that take care of individuals with disabilities.

Collectively, Plaintiffs assist blind, disabled, and illiterate voters with absentee ballots in several ways. On a broader scale, they hold events to teach on the availability and rules for absentee voting, and they train individuals to assist voters with applications. They also create and disseminate physical and online materials on the availability and rules for absentee ballot.

On the individual level, Plaintiffs assist at every point in the application process. When in contact with a voter, Plaintiffs inform them about the option of absentee voting and answer any questions the voter has. When a voter decides to vote absentee, Plaintiffs help the voter obtain an absentee-ballot application. In this respect, Plaintiffs send voters links to download the application and help them access the internet as needed. And when offering in-person assistance, Plaintiffs print applications and hand-out readily available forms.

Once a voter has an absentee-ballot application, Plaintiffs help them fill out the application if the voter needs assistance. Plaintiffs provide voters with supplies to complete an application,

including pens and envelopes and stamps for later mailing.  They also give instructions on the mechanics of filling out the application.

Besides these functions, Plaintiffs offer more involved assistance.  If a voter is unable to read the application, for example, because they are blind or have intellectual disabilities, Plaintiffs may read the application out loud to the voter.  Plaintiffs also explain the meaning of any terms in the application that require a high level of reading comprehension.  And Plaintiffs walk the voter through the application section by section to ensure they fill it out properly.

If the voter is physically unable to fill out the application, sometimes because of mobility or dexterity issues, Plaintiffs prepare the application at the voter's direction.  They also review the completed application to ensure it contains no errors that would prevent its acceptance.

Once an application form has been filled out, Plaintiffs assist with the remainder of the submission process.  They make photocopies of IDs that a voter must include with an application and serve as witnesses for voters who sign the application with a mark. also ensure proper submission to an Absentee Election Manager, including by placing completed applications in the mail.   And if Plaintiffs are concerned that the voter's legal rights have been violated at any point in this process, Plaintiffs may refer the voter to a voting-rights attorney.

Plaintiffs have both paid staff and volunteers who perform these forms of assistance.[2]  Plaintiffs often provide snacks, other food, and water to volunteers to sustain them during their work. They have also given their volunteers gas stipends and branded materials for or in connection with their work.  These items include t-shirts, pens, buttons, bracelets, stickers, and voter educational materials.  To further their mission, Plaintiffs train volunteers and give them access to supplies necessary to assist voters, including envelopes, pens, stamps, paper, printed absentee-ballot applications, tents, tables, clipboards, printers, and postage.

Plaintiffs provide access to many of these listed things of value to voters and individuals accompanying them when they receive assistance.  And they have assisted with absentee-ballot applications in connection with other charitable services, including giving food, financial, and clothing assistance; providing donated materials for health and wellness, such as oxygen machines, walkers, wheelchairs, and compression socks; and offering life assistance, including help applying for jobs, expunging records, and treating drug addiction.

### C.  The Lawsuit

In April 2024, Plaintiffs sued the Alabama Attorney General, the Alabama Secretary of State, and 42 Alabama District Attorneys in the United States District Court for the Northern District of Alabama.   They sought to secure preliminary and permanent

---

[2] LWVAL has no paid employees or staff, but the remainder of Plaintiffs do.

injunctions against enforcement of the Payment and Gift Provisions and Submission Restriction.[3]

Plaintiffs alleged that SB1 violates the First and Fourteenth Amendments, Section 208 of the Voting Rights Act Amendments of 1982, and the Help America Vote Act of 2002. With respect to their Section 208 claim, Plaintiffs asserted that although Alabama Code Section 17-11-4(e) "repeats the text of Section 208, it does not obviate the unlawful restrictions placed by SB1 on the right of disabled, blind, or illiterate voters . . . ." Specifically, Plaintiffs contend that SB1 (1) doesn't expressly state that engaging in conduct to assist blind, disabled, or illiterate voters removes liability under the Payment and Gift Provisions and Submission Restriction and (2) doesn't cite Section 208 or expressly incorporate its protections and definitions.[4]

In April 2024, the district court dismissed the District Attorneys for purposes of streamlining the action by agreement of the parties. But the dismissal order provides that the District Attorneys shall be bound by any injunctive, declaratory, or other non-

---

[3] Plaintiffs also challenged Alabama Code Section 17-11-4(b)(2). That provision makes it "unlawful for any person to knowingly distribute an absentee ballot application to a voter which is prefilled with the voter's name or any other information required on the application form." The district court dismissed all claims against this provision, and it is not at issue in this appeal.

[4] The complaint asserts that Alabama Code Section 17-11-4(d) repeats the text of Section 208. This appears to be a clerical error, as only Alabama Code Section 17-11-4(e) does so (though not identically).

monetary relief against the Alabama Attorney General and Secretary of State.

Plaintiffs moved for a preliminary injunction in early May, and the Alabama Attorney General and Secretary of State moved to dismiss later that month.

To support their motion for a preliminary injunction, Plaintiffs presented a transcript of Alabama legislative committee proceedings and declarations from representatives of their organizations. The declarations explained that Plaintiffs' organizations, their paid staff, and their volunteers risk criminal exposure from SB1 and will have to forego their efforts to assist voters with their absentee-ballot applications, including suspending the activities we've mentioned. *See* Part I.B., *supra*. They also worried that disabled Alabamians, all of whom are constituents of ADAP, may not be able to obtain assistance because of criminal exposure for the paid health aides and healthcare workers who treat them. And, they said, eligible incarcerated voters may not be able to vote absentee if paid prison and jail officials and chaplains face criminal liability.

Besides these materials, Plaintiffs also submitted declarations by four disabled voters explaining how SB1 would interfere with their ability to vote by absentee ballot. Louis G. Courie and Terry Michael McKee, respectively, signed the first two. Courie is an 83-year-old voter who had two strokes. His partner, McKee, is 76 years old and has Parkinson's Disease. Their conditions have rendered them homebound and have severely limited their

mobility and ability to perform major life activities. Courie and McKee would have liked assistance from their neighbor of nearly 25 years who is a member of LWVAL and has assisted them in the past. But they believed that neighbor was at risk of criminal liability from SB1 because LWVAL has given her pens and t-shirts. They thought that counted as a "gift" to assist with an absentee-ballot application. Courie and McKee also believed their paid caregivers could not help because the caregivers are "paid" to generally assist them.

Lauren Faraino also submitted a declaration. Faraino has arthrogryposis multiplex congenita, a condition which has deprived her of use of her arms. She can write with difficulty with her feet, but it is impossible for her to put an absentee-ballot application in an envelope or open a mailbox to send it. She would have liked assistance from her mother to complete and submit the form, but she planned not to vote absentee for fear of criminal exposure for her mother. In the past, she has hired health aides and may again in the future. And she expects they would assist her with an absentee-ballot application if she did.

Eric Peebles provided the final declaration. Peebles has cerebral palsy and quadriplegia. As a result, his control of his motor skills is equivalent to that of an average nine-to-sixteen-month-old. Peebles can't hold a pen or physically complete a paper application. In the past, ADAP has assisted him by sending him a link to the application and helping him complete it. Peebles also requires assistance to place the application in an envelope, seal it, affix a stamp,

and mail it. At the time of his declaration, he would have liked ADAP to have assisted him with his absentee-ballot application. And he would not ask his paid health attendants because he doesn't want to create criminal exposure for them.

On August 21, 2024, after a hearing and supplemental briefing, the district court issued an order granting in part and denying in part the motion to dismiss. Specifically, the court granted the motion to dismiss as to all counts but Plaintiffs' Section 208 claim. As part of its ruling, the court also concluded that the Alabama Attorney General was the only proper party defendant and dismissed the Secretary of State.

The court offered an extensive analysis of the Section 208 claim in its order addressing the motion to dismiss. Characterizing Plaintiffs' Section 208 challenge as a "classic conflict preemption claim," the court concluded that a presumption exists against preemption of state laws in "areas of traditional state responsibility . . . such as the regulation of parties, elections, and ballots . . . absent a clear statement to the contrary." The Court relied on a Senate Judiciary Committee Report that provides that "[s]tate provisions would be preempted only to the extent that they unduly burden the right recognized in this section, with that determination being a practical one dependent upon the facts." S. Rep. No. 97-417 at 63.

Turning to the provisions of SB1 at issue, the court found that Section 208 preempted the Submission Restriction because the Submission Restriction unduly burdened the right by

"criminaliz[ing] the act of returning *anyone* else's absentee ballot application," with "no exception made for blind, disabled, or illiterate voters" and thereby unduly burdening their right to voting assistance. Then, the court also found that the Plaintiffs plausibly alleged that the Payment and Gift Provisions unduly burden a voter's right to "assistance by a person of their choice." These provisions do so, the court reasoned, by, among other things, restricting the ability of organizations with paid employees and volunteers who receive things of value to assist blind, disabled, and illiterate absentee voters.

About a month after ruling on the motion to dismiss and one-and-a-half months before the 2024 election, the district court entered an order preliminarily enjoining the Alabama Attorney General from enforcing the Payment and Gift Provisions and the Submission Restriction with respect to blind, disabled, and illiterate voters.

The Alabama Attorney General now appeals the grant of the preliminary injunction to Plaintiffs.[5]

---

[5] The same day the district granted the motion for a preliminary injunction, the Alabama Attorney General moved for a stay pending appeal. The district court denied that motion, and the Alabama Attorney General moved for a stay pending appeal in our court. We similarly denied that motion, holding that the Alabama Attorney General "ha[d] not made a strong showing that he [was] likely to succeed on the merits, . . . [the Alabama Attorney General] w[ould] not be irreparably harmed if a stay [were] denied, the issuance of a stay would injure the plaintiffs (and other Section 208 voters), and the public interest d[id] not weigh in favor of a stay."

## II. DISCUSSION

The Alabama Attorney General challenges the district court's grant of a preliminary injunction. He argues that Plaintiffs have not shown that they are likely to succeed on the merits of their claim that Section 208 preempts the Payment and Gift Provisions and the Submission Restriction. Nor, the Alabama Attorney General contends, have Plaintiffs shown they will suffer an irreparable harm without an injunction. Ordinarily, we would review that challenge to the district court's grant of a preliminary injunction for abuse of discretion. *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020).

But we decline to reach those questions at this stage of the appeal for two reasons.

First, we first seek to confirm that we, in fact, have authority to answer them. After listening to the parties' positions at oral argument, we're unclear about whether SB1 precludes Plaintiffs from engaging in any of their desired activities. If it doesn't, we lack jurisdiction because Plaintiffs lack standing to bring suit in its current form. And we have an independent duty to figure this issue out before reaching the merits, even if no party raises it. *See FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990) ("Although neither side raises the issue here, we are required to address [standing] even if the courts below have not passed on it, and even if the parties fail to raise the issue before us. The federal courts are under an independent obligation to examine their own jurisdiction,

and standing is perhaps the most important of the jurisdictional doctrines." (cleaned up)).

Second, we cannot assess the district court's conclusion that that SB1 "unduly burdens" the right provided by Section 208 without first understanding what SB1 prohibits as a matter of state law. For their part, the parties strongly disagree on the scope of SB1's prohibitions. The Attorney General argues that SB1 is a limited measure that, among other things, includes an exception to the Submission Restriction for disabled voters, allows a disabled voter to "choose and receive assistance from his paid caregivers," and does not prohibit a voter from paying anyone for help or giving a gift to a helper. The Plaintiffs argue that SB1 is a far-reaching restriction and the Attorney General's limited reading is not consistent with the text of the statute.

Based on the parties' arguments, we're not sure whether and how SB1 creates criminal exposure for any of Plaintiff's conduct or any other form of assistance to blind, disabled, and illiterate voters. Several disputed points stand out about the text of SB1, and we have no decision from *any* Alabama court clarifying them. So in this discussion, we first explain our concerns about the meaning of SB1. Then, we certify several questions to the Alabama Supreme Court.

### A. *Ambiguity in SB1*

In reviewing the text of SB1, four major points stand out. As a result of these sticking points, we are not sure what conduct SB1 actually criminalizes.

### 1.  The Meaning of Section 17-11-4(e)

First, it's not clear what effect Section 17-11-4(e), which guarantees that blind, disabled, and illiterate voters may receive assistance from an individual of their choice, has on the scope of the Payment and Gift Provisions and the Submission Restriction. The Alabama Attorney General argues that Section 17-11-4(e) implicitly exempts assistors of blind, disabled, and illiterate voters from criminal liability from the Submission Restriction. But he still reads assistors of blind, disabled, and illiterate voters to be subject to criminal liability if they violate the Payment and Gift Provisions. And it's not clear how or why Section 17-11-4(e) would carve out an exemption from one part of SB1 and not the other if either stood as an obstacle to a blind, disabled, or illiterate voter receiving their right to assistance.

We may be able to read Section 17-11-4(e) as a catch-all term to ensure blind, disabled, and illiterate voters have access to the assistor of their choice. But we think it would have to apply to all three provisions at issue. That reading would avoid even an inkling of conflict between the Payment and Gift Provisions and the Submission Restriction, on one hand, and Section 17-11-4(e), on the other. *Cf.* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE

INTERPRETATION OF LEGAL TEXTS 180 (2012) ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

On the flip side, Plaintiffs argue Section 17-11-4(e) does not create an exemption from either the Payment and Gift Provisions or the Submission Restriction.  To begin, Section 17-11-4(e) guarantees a right of assistance to "any [blind, disabled, or illiterate] voter," but not any right to a person *to assist*.  So the provision might exempt the voter who receives assistance from prosecution for that assistance.  But it does not expressly say anything about liability for the "assistor" himself.  So an "assistor" could be liable for helping a blind, disabled, or illiterate voter, even if that assistor is the assistor of the voter's choice.  After all, presumably, an assistor could not violate another part of Alabama law to "assist" a blind, disabled, or illiterate voter.  An incarcerated person does not get to break out of jail to assist a blind, disabled, or illiterate voter.  And the Payment and Gift Provisions *separately* criminalize paying someone for assistance (an action a voter would take) and receiving payment for assistance (an action an assistor would take).  *See* ALA. CODE §§ 17-11-4(d)(1)–(2) (2025).

Plus, the Submission Restriction and Payment and Gift Provisions have undisputed exceptions that look very different from Section 17-11-4(e).  The Submission Restriction contains three express exceptions: it does not apply in states of emergency, to voters subject to the Uniformed and Overseas Citizens Absentee Voting Act, and for voters who require emergency treatment within five

days of an election. *See id.* §§ 17-11-4(c)(2) & (f). The former two exceptions apply to the Payment and Gift Provisions as well. *See id.* §§ 17-11-4(d)(1)–(2) & (f). But Section 17-11-4(e) does not *expressly* exempt anyone from any part of SB1.

2. The Meaning of "Distributing, Ordering, Requesting, Collecting, Completing, Prefilling, Obtaining, or Delivering"

A second point about the text of SB1 warrants clarification: SB1 does not criminalize all forms of absentee-ballot application "assistance," only a subset of conduct. The Submission Restriction bars only "submit[ting] a completed absentee ballot application to the absentee election manager other than [one's] own application." At the same time, the Payment and Gift Provisions prohibit only giving or receiving payment or gifts for "distributing, ordering, requesting, collecting, completing, prefilling, obtaining, or delivering a voter's absentee ballot application." *See* ALA. CODE §§ 17-11-4(d)(1)–(2) (2025). The statute defines none of these verbs, and it's not clear whether they encompass the full gamut of absentee-ballot application "assistance."

Plaintiffs express concern that all their conduct—from holding events informing voters about absentee voting to filling out applications at a blind, disabled, or illiterate voter's direction to placing completed applications in the mail—runs headfirst into the Payment and Gift Provisions. And certainly the district court shared their concern. But it's not clear to us whether any or all of Plaintiffs' intended conduct counts as "distributing, ordering,

requesting, collecting, completing, prefilling, obtaining, or deliver-ing" an application.

### 3.  The Meaning of "Payment" and "Gift"

We are similarly uncertain about a third point about the text:  we have substantial doubt as to what counts as "knowingly receiv[ing] a payment or gift for" engaging or "knowingly pay[ing] or provid[ing] a gift to" engage in this prohibited conduct.  *See id.* §§ 17-11-4(d)(1)–(2).  For example, the parties dispute whether the Payment and Gift Provisions categorically bar a paid health aide or healthcare worker from assisting his patient with an absentee-bal-lot application.  Such an aide generally receives a wage or salary for assisting his charge in many ways.  One way might include assisting the voter with an absentee-ballot application.  If so, under SB1, that health aide may then receive money "for" the absentee-ballot-ap-plication assistance he provides.

That the statute attaches criminal liability for "knowingly" providing or receiving a payment tends to support that reading.  Under Alabama law, "[a] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an of-fense when *he is aware* that his conduct is of that nature or that the circumstance exists."  *Id.* § 13A-2-2(2) (emphasis added).  So a per-son who pays or receives a wage may act "knowingly" if he is aware that the duties that wage encompasses include application assis-tance.

At the same time, the Alabama Attorney General argues that a paid health aide may assist a patient with an absentee-ballot application, as long as she doesn't receive a "bonus" for that assistance. If he's right about that, then only when the voter or someone on his behalf makes a separate payment to the health aide for the specific purpose of compensating assistance in the absentee-ballot application process does a person act "knowingly" and a payment is considered "for" assistance.

We have similar questions about the meaning of giving or receiving a "gift for" absentee-ballot application assistance. *See id.* §§ 17-11-4(d)(1)–(2). The statute offers no definition of the term "gift," and we are aware of no Alabama authority identifying the word as a term of art. Plaintiffs list several different things of value—from food and water to branded t-shirts to the very supplies an assistor uses to assist with an absentee-ballot application—that could plausibly be construed as "gifts." And if these items can be "gifts," we are not certain what counts as having given or received them "for" assistance or "to" assist with an absentee-ballot application. For example, the parties dispute whether Courie and McKee may lawfully obtain assistance from their neighbor who has previously received t-shirts and pens from LWVAL.

### 4. The Meaning of "Third Party"

Fourth and finally, the Payment and Gift Provisions don't criminalize giving a "person," or a "person['s]" receiving, payment or a gift for absentee-ballot-application assistance. Instead, they criminalize only activities where a "third party" receives the

payment or gift. *See id.* But the statute doesn't define the meaning of "third party," and we're not sure what it encompasses. We have questions about whether paid health aides and healthcare workers, staff and volunteers of Plaintiffs' organizations, and prison or jail officials count as "third part[ies]" subject to the Payment and Gift Provisions' prohibitions.

★★★

All these points of ambiguity in the text leave us uncertain of the scope of SB1. And as we've noted, no Alabama state court decisions elucidate any of these areas of concern. As for the Alabama Attorney General's position, that may help us reach the right answer, but "an [Alabama] attorney general's opinion is only advisory; it is not binding on [the Alabama Supreme] Court and does not have the effect of law." *Health Care Auth. for Baptist Health v. Cent. Ala. Radiation Oncology, LLC*, 292 So. 3d 623, 635 (Ala. 2019) (citation omitted). So we have no binding authority to guide us on the meaning of this major piece of Alabama election law.

### B. Certified Questions

Rather than stumble around in the dark, we humbly ask the Alabama Supreme Court to turn on the lights. "When faced with substantial doubt on a dispositive state law issue, our 'better option is to certify the question to the state supreme court.'" *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1251 (11th Cir. 2020) (quoting *In re Mooney*, 812 F.3d 1276, 1283 (11th Cir. 2016)). "[A]s a matter of federalism and comity,

dispositive issues of Alabama law should be first presented to the Alabama Supreme Court to decide." *Id.*

So we certify the following four questions to the Alabama Supreme Court under Alabama Rule of Appellate Procedure 18:

1) **The meaning of Subsection (e):** Does Alabama Code Section 17-11-4(e) create an exception to the prohibitions in Alabama Code Section 17-11-4(c) and/or (d)? More specifically, for each of the provisions, does Section 17-11-4(3) immunize from criminal liability (1) a person who gives assistance to a blind, illiterate, or disabled person; (2) a person who receives assistance; and/or (3) the person who pays or gives a gift to a person who gives assistance? If so, what is the extent of that exception?

2) The **scope of** prohibited conduct: Does any of the following count as "distributing, ordering, requesting, collecting, completing, prefilling, obtaining, or delivering" an absentee ballot application under the Payment and Gift Provisions:

   a) Giving the voter a copy of an absentee-ballot application

   b) Providing the voter with a pen, envelope, or stamps to fill out and submit an absentee-ballot application

   c) Informing the voter about the option of and rules for absentee voting

d)  Answering questions on the availability of and
    rules for absentee voting

e)  Creating or giving to (or both) the voter physical
    materials that include information on applying for
    and voting by absentee ballot

f)  Creating or sending to (or both) the voter online
    materials that provide information on applying for
    and voting by absentee ballot

g)  Printing an absentee-ballot application

h)  Sending to the voter a link to an absentee-ballot
    application

i)  Helping the voter access the internet to download
    an absentee-ballot application

j)  Providing instructions to the voter for how to fill
    out an absentee-ballot application

k)  Reading out loud to the voter the absentee-ballot-
    application requirements

l)  Helping the voter fill out their absentee-ballot ap-
    plication, including but not limited to by walking
    the voter through the application section by sec-
    tion to ensure they are completing the form accu-
    rately

m) Physically filling out an absentee-ballot applica-
tion for the voter at the voter's direction

n) Explaining the meaning of complex terms in an
absentee-ballot application

o) Serving as a witness for the voter submitting an
absentee-ballot application signed with a mark

p) Making a copy of the voter's ID to complete their
absentee-ballot application

q) Looking over the voter's absentee-ballot applica-
tion to correct any errors

r) Submitting an absentee-ballot application on the
voter's behalf to an Absentee Election Manager

s) Putting the voter's absentee-ballot application in
an envelope, sealing it, and adding postage.

t) Placing the voter's absentee-ballot application in
the mailbox

u) Referring the voter to a voting-rights attorney
when it appears their right to vote absentee has
been violated

    v) Holding an event to educate on the availability and rules for absentee voting and assist with absentee-ballot applications

    w) Training individuals to assist the voter with their absentee-ballot application

3) **The meaning of "payment" and "third party":** The Attorney General argues that employees who are paid to assist voters generally, such as healthcare workers, may assist voters in filling out absentee ballot applications or delivering those applications despite the prohibitions in (c) and (d) "[u]nless they get a bonus for absentee ballot application services." Does an employee with GBM, the Alabama NAACP, or ADAP, a voter's health aide or healthcare worker, or a prison or jail official, face criminal liability if they assist a voter in completing or delivering an absentee ballot application as part of their job? Does the person or organization who pays them, including the voter herself, face criminal liability if the person knows that the employee, health worker, or prison/jail official is likely to assist the voter in completing or delivering the absentee ballot application? Does the ADAP federal grant create criminal liability under these provisions?

4) **The meaning of "gift":** Does a volunteer with GBM, the Alabama NAACP, LWVAL, or ADAP, who receives snacks, other food, or water; gas stipends; branded items or supplies

that may be useful for their volunteer work, in exchange for, in connection with, or during their volunteer work, face criminal liability if they "distribute, order, request, collect, prefill, complete, obtain, or deliver" an absentee ballot application? Does the person or organization who provides the individuals with these items face criminal liability?

Depending on the answer to these questions, one or more of the Plaintiffs may have failed to establish that they face a credible threat of prosecution from SB1. If the Alabama Supreme Court elects to exercise its discretion and answer our questions, its holding will be "conclusive" on these points. *Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943, 945 (11th Cir. 2009).

Still, as always when we certify questions to the Alabama Supreme Court, these questions are "intended only as a guide." *United States v. Clarke*, 780 F.3d 1131, 1133 (11th Cir. 2015). "We do not mean to restrict the Alabama Supreme Court's consideration of the issues or its scope of inquiry." *W.M. Mobile Bay Env't Ctr., Inc.*, 972 F.3d at 1251. And, of course, "[t]he Alabama Supreme Court may, as it perceives them, restate the issues and modify the manner in which the answers are given." *Id.* We hope that "if we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed . . . the Alabama Supreme Court will feel free to make the necessary corrections." *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1312 (11th Cir. 2000).

## III. CONCLUSION

For the foregoing reasons, we defer our decision in this case until the Alabama Supreme Court has had the opportunity to consider our certified questions and determine whether to exercise its discretion in answering them. The entire record of this case, including the parties' briefs, is transmitted to the Alabama Supreme Court.

**QUESTIONS CERTIFIED.**